**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF KENTUCKY – At Covington**

**Electronically Filed**

| | |
|---|---|
| **COREY R. LEWANDOWKSI, et. al.** | : Case No. 2:22-cv-00106-DLB-CJS |
| **Plaintiffs** | : |
| v. | : |
| **ERIC DETERS, et. al.** | : |
| **Defendants** | : |

**PLAINTIFFS' MOTION TO COMPEL WITH THE DECLARATION OF
CHRISTOPHER WIEST, IN SUPPORT**

Plaintiffs, through Counsel, move this Court for an Order compelling responses to certain

discovery under FRCP 37.  A Memorandum in Support is attached hereto and incorporated by

reference herein.  A proposed order is attached.

Respectfully Submitted,

/s/Christopher Wiest_____
Christopher Wiest (KBA 90725)
25 Town Center Blvd, Ste. 104
Crestview Hills, KY 41017
513-257-1895 (v)
chris@cwiestlaw.com

/s/Thomas Bruns_____
Thomas B. Bruns (KBA 84985)
4555 Lake Forrest Dr., Suite 330
Cincinnati, OH 45242
tbruns@bcvalaw.com
513-312-9890 (c)

/s/Zach Gottesman_____
Zach Gottesman (KBA 86288)
404 East 12 St., First Floor
Cincinnati, OH 45202
zg@zgottesmanlaw.com
*Attorneys for Plaintiffs*

1

**CERTIFICATION UNDER L.R. 37.1**

Pursuant to L.R. 37.1, the undersigned indicates that he has conferred with Defendants' Counsel, and they are unable to resolve this dispute.  Those efforts include no less than three e-mails, two letters, a telephone call, and a step-2 conference with this Court.  True and accurate copies of the written communications are attached to the Declaration at Exhibit 3.

/s/Christopher Wiest_____
Christopher Wiest (KBA 90725)

**MEMORANDUM IN SUPPORT**

**I.    FACTS**

**A.  This case involves multiple, distinct claims.**

Plaintiffs, Cory Lewandowski and Lewandowski Strategic Advisors, LLC. ("Plaintiffs") filed this suit on August 15, 2022, (Compl., DE#1) as a result of a distinct course of conduct and a series of misrepresentations and admissions by Defendant, Eric Deters ("Defendant Deters"). First, on February 23, 2022, Defendant Deters made material misrepresentations to Plaintiffs to induce Lewandowski Strategic Advisors, LLC, through its principal, Corey Lewnadowski ("Mr. Lewandowski"), to enter into a contract with the Deters for Governor Campaign, specifically that (i) Deters, was a well-respected Kentucky attorney; (ii) that Deters was independently wealthy and had more than $5,000,000 in the bank, and (iii) that Deters had sufficient funds to self-fund his campaign for Governor (collectively the "misrepresentations").  (Compl., DE#1, at ¶¶ 15). Plaintiffs were induced to rely on these misrepresentations and, as a consequence, the parties entered into a contract on March 7, 2022.  (*Id.*, DE#1, at ¶¶ 16, 17, 30).  The contract called for a $17,500 monthly payment, but could be terminated by either party with 30 days' notice.  (*Id.*, DE#1, at ¶¶ 21, 23).

The first inkling that these misrepresentations, particularly those about Defendant Deters' ability to self-finance his campaign and his wealth/net-worth, actually were misrepresentations was when Defendant Deters missed the April, 2022 payment – though Defendant Deters promised to make that payment up in May, 2022.  (*Id.*, DE#1, at ¶ 33).  In May, 2022, Defendant Deters and the Campaign came up $400 short for the month, and did not make the April, 2022 payment up, adding further concern that the misrepresentations were just that, misrepresentations.  (*Id.*, DE#1, at ¶ 35).  By June 1, 2022, Mr. Lewandowski learned that the misrepresentations were actual misrepresentations, and he terminated the contract, effective the end of the month.  (*Id.*, DE#1, at ¶ 42).  Defendant Deters owes a $35,400 balance on that contract.  (*Id.*, DE#1, at ¶ 44).

On August 15, 2022, Defendant Deters continued his tortious conduct.  Through his media company, Bulldog Media, Inc., Defendant Deters took to the airwaves to defame Mr. Lewandowski and undertook efforts to try and ensure that the defamation was widely published. (*Id.*, DE#1, at ¶¶ 47-49).

Then, on June 6, 2022, Defendant Deters penned a letter to the undersigned counsel, admitting, in relevant part, that **"[i]n addition ALL of my substantial wealth, and it is substantial, you will hate to know that, is in a trust.  So therefore, even if you win, and you won't, you will never collect a dime."**  (*Id.*, DE#1, at ¶ 53; Declaration Wiest, with Exhibit 1 attached).

That correspondence is evidence tending to demonstrate that Defendant Deters misrepresented *his* wealth and *his* ability to fund a campaign for Governor, (Compl., DE#1, at ¶ 15), and is evidence supporting the other claims regarding the Eric C. Deters Irrevocable Trust ("Trust"), a party to this case.  (*Id.*, DE#1, at ¶¶ 50-53).  Of course, it also raises a more than

reasonable inference that the misrepresentations were made to induce Mr. Lewandowski to take Defendant Deters on as a client.

Consequently, the Complaint contains **seven separate claims**.  First, a breach of contract claim against Defendant Deters and the Deters for Governor Campaign.  (*Id.*, DE#1, at ¶¶ 54-58).  Second, a defamation claim, for the August 15, 2022 false published statements by Eric Deters and Bulldog Media, that includes a claim for punitive damages.  (*Id.*, DE#1, at ¶¶ 59-64).  Third, an invasion of privacy claim against these same parties, also with a claim for punitive damages, for the same August 15, 2022 false published statements.  (*Id.*, DE#1, at ¶¶ 65-69).  Fourth, a tortious interference claim, again, against these same parties, also with a claim for punitive damages, for the same August 15, 2022 false published statements.  (*Id.*, DE#1, at ¶¶ 70-75).

Fifth, a **fraud in the inducement claim** against Deters and the Campaign, based largely (but not solely) on allegations that Deters misrepresented his financial status and wealth to induce Plaintiffs to contract with him (again with punitive damages claims).  (*Id.*, DE#1, at ¶¶ 76-82).  Sixth, a **fraudulent transfer claim**, alleging that Deters, Bulldog, and the Campaign, all being insolvent within the meaning of the statute, made financial transfers to insiders including the Trust, were made with the intent to defraud or hinder creditors, from March 1, 2022 to the present, and seeking the rescission of those transfers, among other relief.  (*Id.*, DE#1, at ¶¶ 76-82).  And seventh, and finally, a trust dissolution claim against the Trust under KRS 386B.4-100(1), and *Inter-Tel Techs., Inc. v. Linn Station Props., LLC*, 360 S.W.3d 152 (Ky. 2012).  (*Id.*, DE#1, at ¶¶ 76-82).

B.  **The discovery and the improper responses**

Plaintiffs propounded discovery to the Defendants through their Counsel on October 7, 2022.  (Declaration Wiest, Exhibit 2).  And on November 7, 2022, Defendant Deters, a non-attorney, purported to respond on behalf of all of the Defendants.  (Declaration Wiest, Exhibit 3). As is relevant for this dispute,[1] that discovery (and Defendant Deters' response, such that it is) consisted of the following:

**Interrogatories:**

8. Please identify all financial assets in your possession.[2] Please include bank accounts, investments, precious metals, real property, cryptocurrency holdings, trust funds, companies, partnerships, corporations, and all other assets or business associations
**ANSWER:**

**Objection. Not relevant.   /s/Eric Deters**

9. Please identify all financial assets possessed by any business associations with which you have any ownership interest, from January 1, 2020 to the present.
**ANSWER:**

**Objection. Not relevant.   /s/Eric Deters**

**Request for Production:**

7. Please produce a copy of all financial assets in your possession.[3] Please include bank accounts, stock portfolios, cryptocurrency holdings, precious metals
**RESPONSE:**

**Objection. Not relevant.   /s/Eric Deters**

20. Please produce the Trust formation document, and any amendments thereto.
**RESPONSE:**

---

[1] After the step 2 conference with the Court, and in light of the discussion between the parties, the Plaintiffs are proceeding on this motion to compel only on the discovery sought in this motion.
[2] This is a request for <u>current</u> financial position information.
[3] This is a request for <u>current</u> financial position information.

5

**Objection. Not relevant.   /s/Eric Deters**

21. Please produce any documents reflecting assets held by the Trust on or after February 1, 2022, or any transfers of any assets into the Trust, from the Trust, or any documents reflecting any encumbrances of Trust assets created on or after February 1, 2022.
**RESPONSE:**

**Objection. Not relevant.   /s/Eric Deters**

22. Please produce a copy of all documents related to the formation, or continuation of the Defendant, Eric C. Deters Irrevocable Trust, including the Trust formation agreement, amendments thereto, and any transfers to or from the Eric C. Deters Irrevocable Trust for the period of January 1, 2022 to the present.
**RESPONSE:**

**Objection. Not relevant.   /s/Eric Deters**

23. Please produce a copy of all of your bank statements for the past 2 years.
**RESPONSE:**

**Objection. Not relevant.   /s/Eric Deters**

24. Please produce a copy of all financial transactions over $500 you have made for the past 2 years.
**RESPONSE:**

**Objection. Not relevant.   /s/Eric Deters**

### C.  The effort to obtain extra-judicial resolution

Emails, letters, and phone calls then followed, in an effort to obtain compliance with the foregoing (both before, and after the step 2 conference with the Court).  (Declaration, Wiest, at Exhibit 4).  Those efforts have not been fruitful.  And, in the same vein, at no time have the corporate entities themselves (or Defendant Deters) actually or effectively responded to the discovery in a manner compliant with the Federal Civil rules, as Mr. Deters pro se response is not effective or in compliance with either FRCP 11(a), or FRCP 26(g)(1), though Mr. Statman purported to do so in a long after the fact unsigned letter that incorporated Mr. Deters' *pro se* responses.

## II.    LAW AND ARGUMENT

### A.  Background, FRCP 37 and FRCP 26

FRCP 37(a) provides that

(a) Motion for an Order Compelling Disclosure or Discovery.

(1) *In General.* On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.
(B) *To Compel a Discovery Response.* A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if:
…
(iii) a party fails to answer an interrogatory submitted under Rule 33; or
(iv) a party fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34.

FRCP 26 (b) governs the scope of discovery, and indicates, generally, that parties "may obtain

discovery regarding any nonprivileged matter that is relevant to any party's claim or defense …

Information within this scope of discovery need not be admissible in evidence to be

discoverable."

Case law is clear that "a plaintiff should not be denied access to information necessary to

establish her claim…"  *Lestienne v. Layne*, 2011 U.S. Dist. LEXIS 116228, 2011 WL 4744912 at

*2 (W.D. Ky. October 7, 2011) (*citing Surles v. Greyhound Lines, Inc*., 474 F.3d 288, 305 (6th

Cir. 2007).  Generally speaking, courts should construe Rule 26 relevance broadly. *Invesco Inst'l*

*(N.A.), Inc. v. Paas*, 244 F.R.D. 374, 380 (W.D. Ky. 2007); *Lewis v. ACB Bus. Servs., Inc.*, 135

F.3d 389, 402 (6th Cir. 1998).  "Any information that bears upon the likelihood of any issue that

is or is likely to be raised in the case is relevant for purposes of discovery." *Locke v. Swift*

*Transp. Co. of Ariz., LLC*, 2019 U.S. Dist. LEXIS 17412 (KYWD 2019).  "Relevant material for

the purpose of discovery will encompass any matter that may bear upon, or reasonably could

7

lead to other matters that could bear upon, any issue that is or likely may be raised in the case." *Roach v. Hughes, et. al.*, 4:13-CV-00136-JHM-HBB, Docket #12, 2014 U.S. Dist. LEXIS 200815 (W.D. Ky. May 7, 2014).  The party resisting discovery bears a heavy burden to "establish either that the material requested does not fall within the broad scope of relevance under Rule 26(b)(1) or is so marginally relevant that the potential harm resulting from the production clearly outweighs the presumption in favor of disclosure." *Invesco Inst'l (N.A.), Inc.*, 244 F.R.D. 374, 380.

### B. Defendants cannot meet their "heavy burden".  Defendants waived their right to object by failing to interpose timely objections, and Defendant Deters' *pro se* response is not valid for represented entities

The discovery responses by Defendant Deters in his *pro se* status are invalid and improper under FRCP 11(a), which requires an attorney, not a *pro se* party, to sign such matters. *Moro Aircraft Leasing, Inc. v. Keith*, 789 F. Supp. 2d 841, 845 (N.D. Ohio 2011).  Further, FRCP 26(g)(1) contains an identical requirement on discovery requests ("every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name—or by the party personally, *if unrepresented*").

"It has been the law for the better part of two centuries . . . that a corporation may appear in federal courts only through licensed counsel." *Rowland v. California Men's Colony*, 506 U.S. 194, 201-202 (1993); *see also Doherty v. American Motors Corp.*, 728 F.2d 334, 340 (6th Cir. 1984) ("The rule of this circuit is that a corporation cannot appear in federal court except through an attorney.").  Moreover, "[a] pleading by a corporation that is not signed by an attorney is treated as unsigned for Rule 11(a) purposes." *White v. Smith, Dean & Assocs., Inc.*, 2010 U.S. Dist. LEXIS 30148 at *2-*3, 2010 WL 795967 (S.D. Ohio Mar. 2, 2010).  Because Defendant Deters, a non-attorney, is represented by Mr. Statman, his signature on documents is likewise

improper in a *pro se* status (see FRCP 11(a) ("…or by a party personally *if the party is unrepresented*")) (emphasis added). (Answer, DE#9).

Thus, the response by Defendant Deters is a nullity. Under FRCP 33(b)(4) and FRCP 34(b)(2)(A) and (C), the failure to timely respond is a waiver of all other objections. *Cargill, Inc. v. Ron Burge Trucking, Inc.*, 284 F.R.D. 421 (D. Mn. 2012); *Tenpenny v. Prime Now, LLC*, 2020 U.S. Dist. LEXIS 261578 (TNMD 2020); *In re Ohio Execution Protocol Litig.*, 2019 U.S. Dist. LEXIS 210442 (SDOH 2019); *Drutis v. Rand McNally & Co.*, 236 F.R.D. 325, 327 (E.D. Ky. 2006). This, in and of itself, warrants granting the motion to compel.

**C. Discovery seeking current financial position, and a two-year lookback on financial position information, is highly relevant as to the punitive damages claims, and to the fraud claims**

As noted, several discovery requests seek *current* financial holding information. Specifically Interrogatory No. 8 ("Please identify all financial assets in your possession. …"), and RFP 7 ("Please produce a copy of all financial assets in your possession."). Further, other requests seek financial information for the preceding two years, including Interrogatory No. 9 ("Please identify all financial assets possessed by any business associations with which you have any ownership interest, from January 1, 2020 to the present"); RFP 23 ("Please produce a copy of all of your bank statements for the past 2 years."); and RFP 24 ("Please produce a copy of all financial transactions over $500 you have made for the past 2 years.").

Plaintiffs plead several claims that include a punitive damage component and Plaintiffs seek punitive damages on those claims. (Defamation, Compl., DE#1, at ¶¶ 59-64; Tortious Interference, DE#1, at ¶¶ 70-75; Fraud, *Id.*, DE#1, at ¶¶ 76-82). It is well settled that information regarding a defendant's net worth or financial condition is relevant to a claim for punitive damages. *TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 462 n. 28,

9

113 S. Ct. 2711, 125 L. Ed. 2d 366 (1993).  Such information allows the factfinder to craft a punitive damages award, if necessary, that will provide appropriate retribution and deterrence. *Romanski v. Detroit Ent., L.L.C.*, 428 F.3d 629, 647 (6th Cir. 2005).

Courts routinely allow production of tax and other financial records where the plaintiff seeks punitive damages. *See, e.g., In re Heparin Prods. Liab. Litig.*, 273 F.R.D. 399, 410 (N.D. Ohio 2011) (Carr, J.*)* ("a party's financial position is relevant to a punitive damages claim, and therefore such discovery is permissible … [and] it is "well-settled law [that] factors such as [net worth] are typically considered in assessing punitive damages.")*; Cawley v. Eastman Outdoors, Inc.*, No. 1:14-CV-00310, 2014 U.S. Dist. LEXIS 130588, 2014 WL 4656381, at *3 (N.D. Ohio) (Gwin, J.).; *Commins v. NES Rentals Holdings, Inc.*, 2018 U.S. Dist. LEXIS 107879 (WDKY 2018) (concluding current financial position information is relevant and related to punitive damages); *U.S. v. Matusoff Rental Co.,* 204 F.R.D. 396, 399 (S.D. Ohio 2001) ("The overwhelming majority of federal courts to have considered the question have concluded that a plaintiff seeking punitive damages is entitled to discover information relating to the defendant's financial condition in advance of trial.").

In terms of scope, courts uniformly hold that both current financial status, and a two-year lookback, is the appropriate scope for punitive damage discovery purposes.  *In re Heparin Prods. Liab. Litig.*, 273 F.R.D. 399, 409 (indicating two-year lookback typical and ordering production of financial information for past two years for punitive damage purposes); *S. Cal. Hous. Rights Ctr. v. Krug*, No. 06-1420, 2006 U.S. Dist. LEXIS 65330, 2006 WL 4122148, *2 (C.D. Cal. Sept. 5, 2006) (limiting discovery to two-year period); *Lane v. Capital Acquisitions*, 242 F.R.D. 667, 670 (S.D. Fla. 2005) (same); *Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 654 (D. Kan. 2004) (same).

We anticipate that Defendants might argue that Plaintiffs have yet to establish their punitive damage claim. The majority of courts hold that a plaintiff seeking punitive damages is entitled to discover information relating to the defendant's financial condition in advance of trial and without making a *prima facie* showing that he is entitled to recover such damages. *Matusoff*, 204 F.R.D. at 399; *Audiotext Commc'ns Network, Inc. v. US Telecom, Inc.*, No. 94-2395-GTV, 1995 U.S. Dist. LEXIS 15395, 1995 WL 625962, at *4 (D. Kan. Oct. 5, 1995); *Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.*, 130 F.R.D. 149, 152 (D. Kan. 1990).

Interrogatory No. 8, RFP 7, RFP9, RFP 23, and RFP 24 are thus relevant to current financial condition of Defendants, and thus relevant to the punitive damage claim. A response should be compelled.

**D. The requested discovery is also highly relevant for the fraud claims**

Plaintiffs propounded certain requests that were highly relevant to the fraud claims as well. Specifically, Interrogatory No. 9 ("Please identify all financial assets possessed by any business associations with which you have any ownership interest, from January 1, 2020 to the present "); RFP 20 ("Please produce the Trust formation document, and any amendments thereto"); RFP 21 ("Please produce any documents reflecting assets held by the Trust on or after February 1, 2022, or any transfers of any assets into the Trust, from the Trust, or any documents reflecting any encumbrances of Trust assets created on or after February 1, 2022"); RFP 22 ("Please produce a copy of all documents related to the formation, or continuation of the Defendant, Eric C. Deters Irrevocable Trust, including the Trust formation agreement, amendments thereto, and any transfers to or from the Eric C. Deters Irrevocable Trust for the period of January 1, 2022 to the present"); RFP 23 ("Please produce a copy of all of your bank

statements for the past 2 years."); RFP 24 ("Please produce a copy of all financial transactions over $500 you have made for the past 2 years").

Again, fraud claims were plead in this matter, including a claim based upon misrepresentations of financial wealth made by Defendant Deters in February 23, 2022. (Compl., DE#1, at ¶¶ 15, 76-82).  Relevance is measured against the claims actually plead.  The purported merit, or allegations about the lack thereof, do not weigh into the analysis regarding relevance.  *Brown v. Tax Ease Lien Servicing, LLC*, 2016 U.S. Dist. LEXIS 195843 *29 (WDKY 2016) ("In other words relevancy relates to existing claims or defenses, not merely to those existing claims or defenses which may at some future, unstated date survive a possible motion to dismiss.").  In *Brown*, as here, Defendant attempted to resist discovery of financial information on the basis that such information is only available post-judgment.  *Id.* at *30.  After noting that general objections (such as those raised here) do not cut it, *id.* at *32, the Court held that production of financial information in a RICO/fraud action were relevant "to assess the financial relationship among the defendants, the structure of the enterprise, measure the scope and extent of defendant's fraud, prove motive, identity of other persons who may have participated in the alleged scheme and to establish damages."  *Id.*

Before turning to other cases that have held financial information in similar contexts is relevant for purposes of discovery, we begin with the elements of the fraud claim: Plaintiffs must prove, under Kentucky law, that Defendant made "a) material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury."  *United Parcel Service Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999).

Again, Plaintiffs alleged that this included misrepresentations, made on February 23, 2022, "(ii) that Deters was independently wealthy and had more than $5,000,000 in the bank, and (iii) that Deters had sufficient funds to self-fund his campaign for Governor." (Compl., DE#1, at ¶ 15). It is self-evident that seeking financial information about whether Defendant Deters, on February 23, 2022, "had more than $5,000,000 in the bank" and "had sufficient funds to self-fund his campaign for Governor" is central (i.e. relevant) to these claims. Consider also the allegations in the Complaint that Defendant Deters and the Campaign almost immediately failed to pay what was owed, when it was owed, in April and through July, 2022. (Compl., DE#1, at ¶¶ 33, 41, 44).

Did Defendant Deters falsely represent his wealth and ability to pay in order to induce Mr. Lewandowski and Lewandowski Strategic Services, LLC to enter into the contract based on financial condition? It goes without saying that advising an unfunded candidate for governor is not of any benefit to Plaintiffs, who have a national client base, especially when those entities trade on Mr. Lewandowski's name, as Mr. Deters did for a period of time. So, did Defendant Deters ever have $5,000,000 in cash in the bank at any time around February, 2022? The answer to those questions goes to the heart of whether Defendant Deters' representations in February, 2022, were false, one of the elements of the fraud claim. They likewise go to the heart of Defendant Deters' knowledge of the falsity, yet another element.

Now consider the June 6, 2022 letter Defendant Deters penned to the undersigned counsel. (Declaration Wiest, Exhibit 1).[4] If that letter is truthful, and by June 6, 2022, Defendant Deters had no personal assets because they were all "in a trust," then that raises other

---

[4] In relevant part, that letter stated: **"[i]n addition ALL of my substantial wealth, and it is substantial, you will hate to know that, is in a trust. So therefore, even if you win, and you won't, you will never collect a dime."** (Declaration Wiest, with Exhibit 1 attached)

relevant inquiries: (1) did he have the assets when he made the representations to Mr. Lewandowski on February 23, 2022 about his finances and ability to self-fund the campaign, and then transfer them?  (2) did he never have the assets?  (3) do the Trust documents or amendments thereto operate to permit Defendant Deters to operate the Trust such that the Trust funds are really Defendant Deters' funds, and the Trust simply is an alter ego of Defendant Deters, such that he could use those funds to operate his campaign?

Those inquiries are relevant not only as to the falsity of Defendant Deters' representations on February 23, 2022, an element of the fraud claim, but also go to his intent. And seeking information about the Trust, in this context, is part and parcel with the fraud claim. For instance, seeking the Trust formation document, and any amendments thereto (RFP 20), or amendments to it (RFP 22), go to the heart of Defendant Deters' authority regarding the Trust, and his ability to pull funds from it to fund the campaign.  Those documents also go to the issue of whether (assuming the representation about the $5,000,000 in the bank was not actually Mr. Deters' funds but instead the funds of the Trust), those assets in a *de facto* fashion can be determined to be Defendant Deters' funds, because he can use Trust funds for personal use.

And this same discovery also goes to the falsity of the representations and his knowledge of that falsity.  If financial documents show that neither the Trust, Defendant Deters, or any other entity that he has an interest in had, either individually or in a combined fashion, $5,000,000 in the bank, then plainly not only did Defendant Deters make false statements, but he clearly could be presumed to have knowledge of that falsity.  That is the genesis of Interrogatory No. 9, the request to identify all financial assets possessed by any business associations with which you have any ownership interest, from January 1, 2020 to the present.  It is also demonstrates why RFP 21's request is relevant for assets held by the Trust on or after February 1, 2022, or any

14

transfers of any assets into the Trust, from the Trust, or any documents reflecting any encumbrances of Trust assets created on or after February 1, 2022.  And it is why RFP 23's request for a copy of all of your bank statements for the past 2 years is relevant.  And why RFP 24's request for a copy of all financial transactions over $500 you have made for the past 2 years is equally relevant.

To be sure, information predating February, 2022 would not necessarily establish falsity, but it could be used to show knowledge and intent.  Consider this: if Defendant Deters (and his corporate entities) *never* had $5,000,000 in the bank, not individually, not combined, and instead were near insolvent, it would plainly be relevant to establish that Defendant Deters had to have known his representations were false when he made them.  Conversely, if he had such funds in December, 2021, or January, 2022, then he may be able to argue mistake as a defense to the fraud allegations.

Without question, numerous Courts have directed the production of similar financial information where fraud is alleged.  *Phx. Life Ins. Co. v. Raider-Dennis Agency, Inc.*, 2010 U.S. Dist. LEXIS 42826 *5 (E.D. Mich. Apr. 30, 2010) (permitting and compelling the production of financial information for a 15-month look-back prior to the alleged misrepresentation regarding financial position for fraud claims and "whether Counter-Plaintiff misrepresented his net worth"); *Brown v. Tax Ease Lien Servicing, LLC*, 2016 U.S. Dist. LEXIS 195843 (WDKY 2016) (in fraud/RICO case where financial condition was at issue, information compelled to be produced, because "[t]he bank accounts, general ledgers, charts of accounts, records of financial distributions, federal and state tax returns, along with the sources of capital … are all relevant … to show the financial relationship between the Defendant parties, the possible involvement of other entities and the ebb and flow of pre-litigation payments …).

15

Plaintiffs particularly note *Grayiel v. Aio Holdings*, No. 3:15-CV-00821-TBR-LLK, 2017 U.S. Dist. LEXIS 233617 (W.D. Ky. May 2, 2017), and the cases cited therein as yet further authority for the production of this information. There, as here, there were allegations of fraud and fraudulent transfer. And, while the Court in *Graviel* recognized generally that financial information does not come into play, it specifically recognized that "[w]here personal financial information is sought to prove a case in chief or an element thereof, the information can be deemed relevant and can be ordered to be produced." *Id.* at *7, *citing Alvarez v. Wallace*, 107 F.R.D. 658, 661 (W.D. Tex. 1985). And that Court observed it was not alone in ordering disclosure where, as here, the claims themselves touch upon the financial information. *Id., citing Paws Up Ranch, LLC v. Green*, 2013 U.S. Dist. LEXIS 167174, 2013 WL 6184940 (D. Nev. 2014) (disclosure of personal financial records was appropriate where allegations of fraud, racketeering, conversion and unjust enrichment had been made); *State Farm Mut. Auto. Ins. Co. v. CPT Medical Services, P.C.*, 375 F.Supp.2d 141, 156-157 (E.D.N.Y.2005) (personal financial records are discoverable where claims of common law fraud and RICO have been made); and *Constitution Bank v. Levine*, 151 F.R.D. 278 (E.D.Pa.1993) (finding that financial records are relevant where claims of fraudulent conveyance of assets have been alleged).

The *Graviel* Court likewise observed that "[i]n sum, there is abundant authority for the proposition that personal financial information is relevant and discoverable in cases alleging fraud, conspiracy to commit fraud, and fraudulent transfers by an individual or potentially by any claim that directly places and individual's financial condition and net worth at issue." *Id.* at *8-*9. That is this case. In *Graviel*, the Court observed that it was dealing with allegations concerning fraud and fraudulent transfer/conveyance. And that Court held that "[a]s an initial matter, Defendant's financial records go to the core issues in this case and are relevant to

16

multiple instances of deception alleged in the Complaint." *Id.* at \*10.  There, as here, there were allegations of fraud and fraudulent transfers.  *Id.* at \*2.  The Court ultimately directed that financial information be turned over in order "to determine whether Defendant is in possession of assets or proceeds traceable to Twist alleged scheme, evidence regarding Defendant's earnings and/or assets during the period of time at issue may be relevant."  *Id.* at \*20.

As noted, Defendant Deters unequivocally represented, in writing, that he is personally insolvent, has transferred assets to his Trust, and creditors will not receive a dime.  (Declaration Wiest, Exhibit 1).  In the same vein, he and the Campaign have been sued for making express misrepresentations about his financial net worth in February, 2022, giving rise to a fraud claim.  Plainly, then, information about his and the Trust and Campaign's finances is highly relevant to the fraud claim, both as to the misrepresentations he made, and his knowledge relating to them.

Also consider *Paws Up Ranch, LLC*, 2013 U.S. Dist. LEXIS 167174, 2013 WL 6184940.  There, as here, there was a contractual relationship that was alleged to have been fraudulently induced.  *Id.*  There, as here, the Plaintiffs sought financial information – not from the Defendant – but from the Defendant's financial institutions – through subpoenas – to which the Defendant objected.  *Id.*  The Court began by noting that the relevance inquiry under both a subpoena and FRCP 26 were the same.  *Id.* at \*10.  Plaintiffs argued that the financial information was relevant to establish elements of the fraud claim, including the Defendant's knowledge.  *Id.*  And the Court thus determined that the information was "relevant and discoverable."  *Id.*  Again, so too here, for the reasons previously explained.

Next, *State Farm Mut. Auto. Ins. Co.*, 375 F.Supp.2d 141, 155-157.  There, there were allegations of fraud concerning insurance reimbursements.  And the Court found that requests for

17

financial information that included "tax returns, general ledgers, bank records and documents relating to" the fraud, were relevant and had to be produced.  *Id.* at 155.

Likewise, other cases similarly support disclosure of financial information where there is some evidence suggesting financial impropriety.  *MedCity Rehab. Servs., LLC v. State Farm Mut. Auto. Ins. Co.*, 2013 U.S. Dist. LEXIS 64670 at *20-*22 (EDMI 2013) ("[t]he bank records of MedCity and Dr. Teklehaimanot's and Collins's professional corporations are relevant to establishing the financial relationships among Dr. Teklehaimanot, MedCity, Collins, and In & Out, among others. The bank records will also show the parties' financial motive in perpetuating the fraud scheme…").  Again, so too here.

Interrogatory No. 9, RFP 20, RFP 21, RFP 22, RFP, and RFP 24 are thus relevant to the fraud claims and responses should be compelled.

### E.  The requested discovery is relevant for the fraudulent transfer and trust dissolution claims

Plaintiffs likewise plead fraudulent transfer claims (Compl., DE#1, at ¶¶ 76-82), and sought discovery that was highly relevant to those claims.  Specifically, Interrogatory No. 9 ("Please identify all financial assets possessed by any business associations with which you have any ownership interest, from January 1, 2020 to the present "); RFP 20 ("Please produce the Trust formation document, and any amendments thereto"); RFP 21 ("Please produce any documents reflecting assets held by the Trust on or after February 1, 2022, or any transfers of any assets into the Trust, from the Trust, or any documents reflecting any encumbrances of Trust assets created on or after February 1, 2022"); RFP 22 ("Please produce a copy of all documents related to the formation, or continuation of the Defendant, Eric C. Deters Irrevocable Trust, including the Trust formation agreement, amendments thereto, and any transfers to or from the Eric C. Deters Irrevocable Trust for the period of January 1, 2022 to the present"); RFP 23

18

("Please produce a copy of all of your bank statements for the past 2 years."); RFP 24 ("Please produce a copy of all financial transactions over $500 you have made for the past 2 years").

The Kentucky UFTA is codified at KRS Chapter 378A. That statute includes a threshold analysis of whether a Defendant is insolvent. KRS 378A.020(1). The statute provides relevant definitions as well, making clear that it applies regardless of whether or not a claimant has obtained a judgment yet, or not. For instance, KRS 378A.010(3) defines "claim" as "a right to payment, <u>whether or not the right is reduced to judgment</u>, liquidated, unliquidated, fixed, <u>contingent, matured, unmatured, undisputed, legal, equitable, secure, or unsecured.</u>" Said another way, it does not matter one bit whether the claim is brought pre- or post-judgment. It defines a "creditor" as someone who has a claim. KRS 378A.010(4). And it defines "insider" as relatives, affiliates, persons in control or officers of corporations, and the like. KRS 378A.010(8).

In fact, KRS 378A.040 specifically applies and permits claims by creditors (i.e. people with claims) **on a pre-judgment basis**. And that section provides that transfers made by such persons with an intent to defraud, or without equivalent consideration, are voidable by a creditor. KRS 378A.040(1). In the same vein, that section provides the kinds of evidence to establish that intent, such as transfers to insiders, without equivalent value, or all of the persons assets, are badges of fraud that establish the intent to defraud. KRS 378A.040(2).

We would be remiss if we did not note that this Court has pointed out that the statute of limitations starts running on this claim long before any judgment is obtained, namely when the fraudulent transfer occurred. *Parton v. Parton*, 2022 U.S. Dist. LEXIS 112032 at *11-*12 (EDKY 2022). Again: Defendant Deters admits to having placed all his "substantial" assets in trust to defeat his creditors. (Declaration Wiest, at Exhibit 1). And this Court observed in

19

*Parton* that the analysis turns on the date(s) of the transfers, and on whether there was equivalent value for the transfers. *Id.* at \*12, *citing Valley City Steel, LLC v. Liverpool Coil Processing, Inc.*, 336 Fed. App'x 531, 534 (6th Cir. 2009).

Simply put, there is no rational argument against discovery. How in the world could anyone timely file and prove a fraudulent transfer claim if, as Defendants suggest, no pre-judgment inquiry can ever be made into such transfers (even where a Defendant admits in writing that he is insolvent **because** he placed all his "substantial" assets beyond the reach of his creditors)? To pose the question is to answer the question. And, the notion of a uniform fraudulent transfer act is just that: a uniform act (Kentucky adopted its act a little later than most other states, in 2016). But it is adopted in many states.

Not surprisingly, states interpreting the "uniform" act hold that an underlying judgment need not be obtained, (and courts have held that the UFTA claim should not be stayed for resolution of an underlying judgment, and discovery should proceed). *Friedman v. Heart Inst. of Port St. Lucie, Inc.*, 863 So. 2d 189, 192-193 (Fl. 2003) ("Thus, as is universally accepted, as well as settled in Florida, 'A 'claim' under the Act may be maintained even though 'contingent' and not yet reduced to judgment. … Indeed, if automatically staying discovery and progression of FUFTA claims was standard and a failure to do so an abuse of discretion, the goal of protecting creditors from wrongful asset transfers would likely be nearly entirely frustrated"); *Gulf Insurance Co. v. Clark*, 2001 MT 45, 304 Mont. 264, 20 P.3d 780 (2001); *Klingman v. Levinson*, 114 F.3d 620 (7th Cir. 1997); *U.S. v. Brickman*, 906 F. Supp. 1164 (N.D. Ill. 1995); *Tolle v. Fenley*, 132 P.3d 63, 2006 UT App 78 (Utah App. 2006); *Cox v. Hughes*, 781 So. 2d 197 (Ala. 2000); *Cook v. Pompano Shopper, Inc.*, 582 So. 2d 37 (Fla. App. 1991); *Granberry v. Johnson*, 491 So. 2d 926 (Ala. 1986).

20

That then takes us back to *Grayiel*, No. 3:15-CV-00821-TBR-LLK, 2017 U.S. Dist. LEXIS 233617, which involved, among other things, fraudulent transfer claims. The *Grayiel* Court held that "[a]s an initial matter, Defendant's financial records go to the core issues in this case and are relevant to multiple instances of deception alleged in the Complaint." *Id.* at \*10. There, as here, there were allegations of fraud and fraudulent transfers. *Id.* at \*2. The Court ultimately directed that financial information be turned over in order "to determine whether Defendant is in possession of assets or proceeds traceable to Twist's alleged scheme, evidence regarding Defendant's earnings and/or assets during the period of time at issue may be relevant." *Id.* at \*20.

The requested discovery seeks information and evidence central to the UFTA claims. For instance, the requests about the Trust formation and continuation or amendment documents goes to the issue of the Trust being an "insider" of Mr. Deters. KRS 378A.010(8); RFP 20 (Trust formation documents); RFP 22 (Trust amendment or continuation documents). Is Defendant Deters a Trustee? Does he retain control over the assets? If either of those answers are "yes," then the Trust is an insider and affiliate of Defendant Deters. KRS 378A.010(8)(d); KRS 378A.010(1)(c) or (d). And RFP 20 and RFP 22 answers both of those questions.

Were there transfers to the Trust, or other business entities controlled by Defendant Deters, within the relevant period by Defendant Deters, and was he insolvent at the time? Interrogatory No. 9, RFP 21, RFP 22, RFP 23, and RFP 24 all assess and are designed to obtain evidence about both transfers to the Trust within the relevant period and the solvency of Defendant Deters in the relevant time period. And all of that goes to the substantive claim portion of the statute of a pre-judgment claimant, namely, transfers of an insolvent person to an entity that is either an insider, or without equivalent consideration. KRS 378A.040.

21

Before we turn to the trust dissolution claim, we wanted to end here: this is no fishing expedition. These requests go to the heart of claims that are premised upon party admissions made by Defendant Deters himself, specifically, a letter penned and signed by him, in which he stated: **"[i]n addition ALL of my substantial wealth, and it is substantial, you will hate to know that, is in a trust. So therefore, even if you win, and you won't, you will never collect a dime."** (Declaration Wiest, with Exhibit 1 attached). Whatever spurious allegations Defendant Deters may lodge at the undersigned, <u>he</u> is the one who put at issue the Trust, his insolvency, and transfers made to the Trust, as well as the need to pursue the claims against the Trust.

Finally, and also relevant here, Plaintiffs plead a trust dissolution claim against the Trust under KRS 386B.4-100(1), and *Inter-Tel Techs., Inc. v. Linn Station Props., LLC*, 360 S.W.3d 152 (Ky. 2012). (Compl., DE#1, at ¶¶ 76-82). KRS 386B.4-100(1) provides, in relevant part, the statutory power of a court to dissolve a trust where "the purposes of the trust have become unlawful," or "contrary to public policy." Further, *Inter-Tel Techs., Inc.*, 360 S.W.3d 152, is Kentucky's primary alter ego case. Like the fraudulent transfer case, proof that Defendant Deters exerted primary control over the Trust and transferred his personal assets to the Trust is relevant in such a claim.

Plaintiffs must establish that Defendant Deters "exercised dominion over the corporation to the point that it has no real separate existence." *Id.* at 155. The Kentucky Supreme Court held that such a piercing claim turns on the following questions: "grossly inadequate capitalization, egregious failure to observe legal formalities and disregard, of distinctions between parent and subsidiary, and a high degree of control by the parent over the subsidiary's operations and decisions, particularly those of a day-to-day nature." *Id.* at 164. One of the factors that

22

establishes trust piercing is an "intentional scheme to squirrel assets into a liability-free corporation while heaping liabilities upon an asset-free corporation would be successful." *Id.*

Which takes us back to the discovery. RFP 20 (Trust formation documents) and RFP 22 (Trust amendment or continuation documents) are geared towards the legal formalities of the Trust, or failures to observe them, and control over them. RFP 21, RFP 22, RFP 23, and RFP 24 assess both transfers to the Trust within the relevant period and the solvency of Defendant Deters in the relevant time period, which goes to whether there was a "intentional scheme to squirrel assets into a liability-free corporation while heaping liabilities upon an asset-free corporation would be successful." *Id.* Which, again, Defendant Deters already admitted to, in writing. (Declaration Wiest, with Exhibit 1 attached).

To say that the discovery, specifically Interrogatory No. 9, and RFP 20, 21, 22, 23, and 24 is reasonably calculated – indeed designed – to lead to relevant (indeed central) information on these claims is an understatement. And Courts have directed the production of this type of information in similar veil piercing cases. *Kroger Co. v. Merrill*, 2009 U.S. Dist. LEXIS 56841 at *6-*7 (SDOH 2009) ("This inquiry includes whether the Defendants commingled personal and corporate funds. While this information would likely be evident from a complete picture of Pinnacle's financial records, Kroger need not rely on the Merrills' representation that they have provided all such information, particularly when the claims include[] allegations of fraud. Indeed, the financial records of the individual Defendants are relevant to the allegations in this action that the Merrills abused the corporate form of Pinnacle. Therefore, the financial records of the individual Defendants fall within the "extremely broad" range of discoverable evidence.").

23

Yet again, Interrogatory No. 9, and RFP 20, 21, 22, 23, and 24 are all reasonably designed to obtain highly relevant – indeed central – information to support the fraudulent transfer claims.

## III.   CONCLUSION

The requested Motion to Compel answers to Interrogatory Nos. 8 and 9, and Request for Production Nos. 7, 20, 21, 22, 23, and 24, should be granted.

Respectfully Submitted,

/s/Christopher Wiest_____
Christopher Wiest (KBA 90725)
25 Town Center Blvd, Ste. 104
Crestview Hills, KY 41017
513-257-1895 (v)
chris@cwiestlaw.com

/s/Thomas Bruns_____
Thomas B. Bruns (KBA 84985)
4555 Lake Forrest Dr., Suite 330
Cincinnati, OH 45242
tbruns@bcvalaw.com
513-312-9890 (c)

/s/Zach Gottesman_____
Zach Gottesman (KBA 86288)
404 East 12 St., First Floor
Cincinnati, OH 45202
zg@zgottesmanlaw.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing upon counsel for the Defendants, this 14th day of December, 2022, via service via CM/ECF, which shall provide notice to them.

/s/Christopher Wiest_____
Christopher Wiest (KBA 90725)

24