IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY – at Covington

| | |
|---|---|
| COREY R. LEWANDOWSKI, *et al* ) <br> ) <br> ) <br> PLAINTIFFS, ) <br> ) <br> v. ) <br> ) <br> ERIC DETERS, *et al.* ) <br> ) <br> DEFENDANTS. ) | Judge DLB-CJS <br><br> CASE NO. 2:22-CV-106 |

### DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL

**Come Now** Defendants Eric C. Deters ("Deters"), Deters For Governor Campaign, Bulldog Media, Inc. ("Bulldog Media"), Eric C. Deters Irrevocable Trust (the "Trust") (each a "Defendant" and collectively, "Defendants") by and through counsel, and respectfully submit their Brief in Support of Their Opposition to Plaintiffs' Motion to Compel (the "Motion") [ Doc 23].

## INTRODUCTION

This case arises from a consulting agreement entered into on March 7, 2022, between "Eric Deters for Governor" and Plaintiffs Lewandowski Strategic Advisors, LLC, a Delaware limited liability company, wholly owned by Cory R. Lewandowski ("Lewandowski") (the "Consulting Agreement"). Doc. 1-1, p 1. According to Plaintiffs' own averment, Defendant Deters for Governor Campaign is the campaign for Eric C. Deters for Governor, is not registered as a separate entity with the Kentucky Secretary of State, and is for all intents and purposes, the alter ego of Eric C. Deters, Doc. 1, ¶ 4. Therefore, for purposes of this action in general and this response in particular, Defendants will not differentiate between the campaign, Eric Deters for Governor and Deters himself.

1

The Consulting Agreement contains an integration clause that reads as follows:

> It is agreed *that there is no representation, warranty, collateral agreement or condition affecting this Agreement except as expressly provided in this Agreement and Exhibit A hereto.*

Doc. 1-1, p. 6, ¶ 29. (emphasis added). This clause defeats Plaintiff's claim.

Plaintiffs terminated the Consulting Agreement on June 1, 2022, effective July 1, 2022 as a result of a dispute with Deters as to the terms of and performance under the Consulting Agreement. *Id.* at ¶42. On August 15, 2022, Plaintiffs filed a Complaint against Deters, but also Bulldog Media Inc. ("Bulldog Media"), a company owned by Deters, and Eric C. Deters Irrevocable Trust, a trust of which Deters and his wife are co-trustees, asserting not only a breach of contract claim but also four (4) tort claims, defamation, invasion of privacy, tortious interference and fraud, all tort claims asserted assumedly in order to be able to claim punitive damages; and two (2) statutory claims, a fraudulent transfer claim and a trust dissolution claim. Defendants filed an answer and asserted a counterclaim for breach of contract. Doc. 9, ¶ 95. Deters has filed a counterclaim and denies all the allegations.

The gist of Plaintiffs' argument in the Complaint and in the Motion is that (i) Lewandowski met Deters at "an expensive fundraising event organized by Donald Trump at Mar-A-Lago on February 23, 2022 that cost $125,000 to attend and that Deters paid that amount. (Doc 1.¶¶ 13-14) and (ii) at that dinner, Deters allegedly made a series of misrepresentations to Lewandowski regarding his personal and professional accomplishments that induced Plaintiffs to enter into the Consulting Agreement, (iii) that Plaintiffs did enter into the Consulting Agreement and were ultimately harmed by Deters' misrepresentations. Doc. 23, pp. 3 and 4. Plaintiffs note that Deters paid $75,000 to attend the Kentucky Derby in May 2022. Id. at ¶36. The only concrete damages that Plaintiffs allege Deters owes them are $36,122.10 in fees and reimbursement of expenses

2

under the Consulting Agreement. *Id*. at ¶ 58.[1] Plaintiffs claim other nebulous damages allegedly arising out of their tort claims, including punitive damages. In reality, Plaintiff needed nor received any inducement. While Deters spent $200,000, Plaintiff is claiming Deters misrepresented his finances.

There is a $75,000 jurisdictional threshold question here, as well.

On October 7, 2022, Plaintiffs served on Defendants their first set of discovery requests. Declaration of Christopher Wiest, Doc. 23.1 p. 1. Defendants served their responses on November 7, 2022, November 17 and 22, 2022. *Id*. Ensued a series of communication between the parties attempting to resolve their differences as to the scope of discovery and the production of certain financial information in particular. *Id*.

Because the parties were unable to resolve their differences, on December 1, 2022, an informal telephone conference was held with the Court to address the discovery dispute concerning Defendants' responses to Plaintiffs' discovery requests, in particular the requests for the financial information. Doc. 21. The Court informed the parties it did not believe Plaintiffs were entitled to the documents but authorized Plaintiffs to proceed with a motion to compel absent a resolution of the parties' differences. *Id*. Plaintiff filed the instant motion on December 14, 2022. Doc. 23. Plaintiffs seek to obtain the following discovery:

### Interrogatories:

8. All financial assets in your possession including bank accounts, investments, precious metals, real property, cryptocurrency holdings, trust funds, companies, partnerships, corporations, and all other assets or business associations.

9. All financial assets possessed by any business associations with which you have any ownership interest, from January 1, 2020 to the present.

### Request for Production:

---

[1] Plaintiffs also claim that Deters owes them an additional amount in excess of $50,000, the origin of which is unclear at best. Doc.. 1, ¶ 58

3

7. All financial assets in your possession, including bank accounts, stock portfolios, cryptocurrency holdings, precious metals

20. Trust formation document, and any amendments thereto.

21. Any documents reflecting assets held by the Trust on or after February 1, 2022, or any transfers of any assets into the Trust, from the Trust, or any documents reflecting any encumbrances of Trust assets created on or after February 1, 2022.

22. All documents related to the formation, or continuation of the Defendant, Eric C. Deters Irrevocable Trust, including the Trust formation agreement, amendments thereto, and any transfers to or from the Eric C. Deters Irrevocable Trust for the period of January 1, 2022 to the present.

23. Bank statements for the past 2 years.

24. All financial transactions over $500 made for the past 2 years.

Plaintiffs' discovery requests and subsequent Motion make abundantly clear that Plaintiffs are on a mission to harass Defendants with requests that go far beyond the scope of this case. As discussed below, there is nothing on the face of the Complaint that justifies Plaintiffs' broad requests related to the financial condition of Defendants and documents related to the Trust. The integration clause of the Consulting Agreement that forms the basis of this action precludes Plaintiffs' main argument that they relied on Deters' representation at the Mar-A-Lago dinner prior to the execution of that agreement. Therefore, the Motion should be denied in its entirety.

## LEGAL STANDARD AND ARGUMENT

Rule 26 of the Federal Rule of Civil Procedure (Fed. R. Civ. P.") governs discovery. Fed. R. Civ. P. 26(b)(1) provides as follows:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

4

Courts have explained that the "scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Allen v. Wyndham Vacation Resorts, Inc.*, No. 3:18-CV-259-TAV-DCP, 2021 WL 2434355, at *3 (E.D. Tenn. Mar. 18, 2021) (internal citations omitted)

However, courts have cautioned that "[d]iscovery requests are not limitless, and parties must be prohibited from taking 'fishing expeditions' in ***hopes of developing meritorious claims***." *Bentley v. Paul B. Hall Reg'l Med. Ctr.*, No. 7:15-CV-97-ART-EBA, 2016 WL 7976040, at *1 (E.D. Ky. Apr. 14, 2016) (emphasis added). "[T]he [C]ourt retains the final discretion to determine whether a discovery request is broad or oppressive." *Id.* (citing *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)).

In this case, the discovery sought by Plaintiffs is nothing but a fishing expeditions designed to try to substantiate their argument that Deters misrepresented his ability to pay, which argument is clearly inconsistent with the acts pleaded in the Complaint. [2]

**I.      The discovery of the financial information sought by Plaintiffs is not relevant nor proportional to the needs of the case as it is inconsistent with the facts pleaded by Plaintiffs.**

**A. The Fraudulent Inducement Claim**

This case is essentially and intrinsically a breach of contract case where each party claims that the other breached the Consulting Agreement. Plaintiffs allege that they are owed 36,122.10 in fees and reimbursement of expenses Doc. 1 at ¶ 58. Said Consulting Agreement is crystal clear: ***there is no representation, warranty, collateral agreement or condition affecting this Agreement except as expressly provided in this Agreement and Exhibit A hereto.*** Doc. 1-1, p. 6, ¶ 29.

---

[2] Plaintiffs also argue that Defendants' discovery responses as to the corporate entities are invalid because responded to by Mr. Deters. After Mr. Deters served his initial response to Plaintiffs' discovery requests on October 7, 2022, two other sets of responses were sent by Defendants, including the corporate entities by Alan Statman, counsel to the corporate entities on November 17 and November 22, 2022. See Doc. 23-1, pp 67-69 and 75-78.

5

(emphasis added). Despite this clear language, Plaintiffs bring a fraudulent inducement claim. This claim is clearly precluded by the language of the very contract that is attached to the Complaint as there cannot be any reliance on representation, if any, that are made outside of the Consulting Agreement. Not only the claim is precluded by the Consulting Agreement itself, it is also inconsistent with what Plaintiffs plead in the Complaint.

Plaintiffs' purported rationale for requesting information related to Defendants' financial condition is that Deters duped Lewandowski into believing that he was a wealthy man, that in fact he is not and thus, his ability to pay punitive damages is questionable. Yet, there is absolutely nothing in the Complaint that supports such a conclusion and that lead to believe that Deters is not as wealthy as he claims. On the contrary, the allegations of the Complaint show that Deters paid $125,000 to attend the Mar-A-Lago fundraising dinner and another $75,000 barely three months later to attend the Kentucky Derby. These are not amounts that the average person is at leisure to spend on a dinner or a sports event. Such statements do evidence at least a relative wealth consistent with the other representations made by Deters at that dinner. What is more, Lewandowski claims that he learned that the representations Deters made in February, 2022, at the Mar-A-Lago event were materially false. Specifically, Mr. Lewandowski learned that Deters was not a Kentucky attorney, that Deters' license had been suspended or revoked in Kentucky for various acts of misconduct, that Deters was not independently wealthy, that Deters did not have more than $5,000,000 in the bank, and that Deters could not self-fund his campaign for Governor.Doc. 1, ¶ 41. The Complaint does not explain how Lewandowski "learned" that Deters did not have more than $5,000,000 in the bank. Further, Deters would not have lied if he did say he was an attorney in Kentucky, which Deters denies. He was and still is. He is just a "retired lawyer" both in Kentucky and Ohio as stated on every email communication that Deters sends.

6

Deters claims he never misrepresented anything. Finally, the standing of an attorney with the bar of a jurisdiction is in the public domain, therefore easily accessible to anyone. It would have been easy for Lewandowski to verify prior to entering into the Consulting Agreement. The financial information sought by Plaintiffs is neither relevant nor proportional to the needs of this case when Plaintiffs' fraudulent inducement claim is precluded by the integration clause of the Consulting Agreement as well as the implausibility and internal inconsistency of Plaintiffs' allegations. Plaintiffs' request should be denied.

## B. The Other Tort Claims

Plaintiffs' other tort claims do not justify either the production of Defendants' financial condition. Plaintiffs bring a defamation claim (Doc. 1, ¶¶ 59-64), invasion of privacy (*id.* at ¶¶ 65-69) and tortious interference with business relationship claim (*id.* at ¶¶ 70-75) based on certain remarks allegedly made by Deters during one of his shows aired on YouTube.[3] The incongruity of these claims cannot be overstated and actually shed light on Plaintiffs' lack of good faith in bringing these claims devoid of any merit. To wit, one wonders how the rather innocuous statements at stake here, broadcasted on a YouTube channel watched mostly locally can actually damage the reputation, invade the privacy or interfere with the business relationships of someone

---

[3] These allegations are:
a. Deters falsely claimed that he tried to renegotiate the Agreement, and Mr. Lewandowski "ignored him."
b. Deters falsely claimed that Mr. Lewandowski and Lewandowski Strategic Advisors, LLC failed to write a fundraising letter attacking Senator McConnell, and thereby breached the Agreement;
c. Deters falsely claimed that Mr. Lewandowski and Lewandowski Strategic Advisors, LLC "lied about the Trump endorsement" and the "timing of it" and falsely claimed that Mr. Lewandowski told Deters that Lewandowski spoke with Trump every day;
d. Deters falsely claimed that Governor Kristi Noem fired Mr. Lewandowski and Lewandowski Strategic Advisors, LLC;
e. Deters falsely claimed that Charles W. Herbster, a candidate for Nebraska Governor, fired Mr. Lewandowski and Lewandowski Strategic Advisors, LLC; and
f. Deters falsely claimed that Mr. Lewandowski told Deters that the reason that Mr. Lewandowski got hired as Trump's campaign manager was that "no one wanted to do it." Doc. 1. ¶ 47.

who just has taken a criminal plea deal of no contest to resolve allegations that he made unwanted sexual advances to a GOP donor at a Las Vegas event and whose lies, deceits and failures are littered across the internet.[4] One would think that claiming, even if it were false, that Lewandowski ignored Deters when Deters tried to renegotiate an agreement or that Lewandowski lied about a Trump endorsement is pretty harmless compared to the other troubles that Lewandowski keeps finding himself in!. Asserting these claims is preposterous, asking for punitive damages is outrageous.

Under these circumstances, it cannot be said that the financial information sought by Plaintiffs is relevant or proportional to the needs of what is a mere breach of contract case. Plaintiffs' request should be denied.

### C. The Cases Cited by Plaintiffs are Inapposite

*TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 462 n. 28,113 S. Ct. 2711, 125 L. Ed. 2d 366 (1993) addressed admission **at trial of evidence** of TXO's alleged wrongdoing in other parts of the country, and of its net worth that led the jury to base its award on impermissible passion and prejudice. *TXO Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443, 462, 113 S. Ct. 2711, 2723, 125 L. Ed. 2d 366 (1993). Likewise, in *In re Heparin Prod. Liab. Litig.*, 273 F.R.D. 399, 407 (N.D. Ohio 2011), the court found relevant a party's financial position with regard to **the assessment** of punitive damages. *Id.* (internal citations omitted). *Brown v. Tax Ease Lien Servicing, LLC*, No. 3:15-CV-208-CRS, 2016 WL 10788070, at *10 (W.D. Ky. Oct. 11,

---

[4] *See e.g.*, https://news.yahoo.com/corey-lewandowski-finally-went-too-005942467.html? (last consulted January 11, 2023)
https://www.salon.com/2021/10/03/ex-aide-corey-lewandowski-bragged-about-two-men-before-groping-donor-police-report/ (Last consulted January 11, 2023)
https://www.huffpost.com/entry/corey-lewandowski-plea-deal_n_63380567e4b08e0e606e1f0c (last consulted January 12, 2023)

2016), the court permitted the discovery of defendants' tax returns, general ledgers and bank records in **a RICO action** "to assess the financial relationship among the defendants, the structure of the enterprise, measure the scope and extent of defendant's fraud, prove motive, identity of other persons who may have participated in the alleged scheme and to establish damages". *Id.*

In *Grayiel v. AIO Holdings, LLC*, No. 315CV00821TBRLLK, 2017 WL 11592083, at *3 (W.D. Ky. May 2, 2017),the plaintiff alleged that a then-deceased former business partner solicited plaintiff to invest in what was a fraudulent ***and ponzi-like natural gas drilling scheme, using a labyrinth of entities and holding companies to violate agreements with his investors, divert invested funds to his personal use, and ultimately defraud his investors including plaintiff***. The plaintiff brought claims for fraudulent conveyance, fraud, aiding and abetting fraud, conversion, and civil conspiracy. *Id.*

It is in that context that the plaintiff brought the motion to compel was brought to obtain an order requiring the defendant to produce "all relevant financial documents responsive to [r]equests contained in [plaintiff's] Second Set of Requests for Production of Documents." The court did find that the Defendant's financial records went to the core issues in this case and were relevant to multiple instances of deception in the context of that ponzi-scheme. "Attempts to gather documents demonstrating the fraudulent nature of monetary transfers to parties such as Defendant, **where a ponzi-scheme has been alleged** also 'fall squarely within the scope of relevant discovery. *Sallah v. Worldwide Clearing LLC*, 855 F. Supp. 2d 1364, 1370 (S.D. Fla. 2012).

This case is a far cry for a RICO or ponzi-scheme case. It is for all intents and purposes a mere breach of contract case with all but less than $40,000 at stake to which Plaintiff (or his lawyer) appended various tort claims unsupported and/or contradicted by the facts pleaded in the Complaint for the sole purpose of claiming punitive damages. One's finances are a deeply personal

matter. Every defendant has a right to privacy to her financial information that must be weighted against the relative ease with which a plaintiff can state a claim for punitive damages. If disclosure of private financial information is compelled before *any* showing that the punitive allegations have a basis in fact, plaintiffs may be tempted to include punitive damages claims with the sole purpose of discovering a defendant's financial condition, information which could be very useful in settlement discussions or used to harass or embarrass a defendants. This is the case here. Plaintiffs have not basis in fact to request punitive damages and have manufactured tort claims and fraudulent transfer claims for the sole purpose of obtaining Deters' financial information which they could not obtain solely based on a contract claim. Their request should be denied.

### D. The Fraudulent Transfer and Trust Dissolution Claims

Based on nothing more than off-hand comments made by Deters in response to Plaintiffs' demand letters, without any more substantiation and misrepresentations, Plaintiffs assert a fraudulent conveyance claim and seek to have a trust long established by Deters and his spouse dissolved. Doc. 1, ¶¶ 83-88; 89-92. Besides regurgitating the elements of each of those claims, Plaintiffs do not allege any specific facts establishing what transfer(s) is/are alleged to be fraudulent, when they were made and even that Deters does not have the ability to pay his debts. Refusing to pay a legitimately disputed debt is a far cry from being unable to pay one's debts as they become due and asserting that a substantial part of one's assets are in a trust does not equate fraudulent intent or avoidance of creditors. Plaintiffs does not want the trust documents to "support" their claim because they have no claim but a breach of contract claim, They want the trust documents to impermissibly "make" their claim and develop a meritorious claim. Requiring the production of such private documents under these circumstances would create a presumption that any irrevocable trust is set up for fraudulent purposes. Plaintiffs contracted with Deters, not

the Trust. Any document related to the latter are outside the scope of this action and not reasonable calculated to lead to discoverable evidence and is of no consequence to the resolution of this action. Therefore, Plaintiffs' request for all Trust related documents should be denied.

## CONCLUSION

The Court should follow its conference conclusion. It is obvious what this is about. The attached **Exhibit 1** is an update on the vicious and malicious, out of control conduct by Chris Wiest. He even recorded a lis pendens without notice to Eric Deters, leading to litigation on that issue. He filed that lis pendens in this action. One case Judge Summe dismissed, but a motion to reconsider and a motion to disqualify her is pending. The other two cases are pending and a Motion to Lift the Lis Pendens is being filed this week. Chris Wiest believes he can defame and harass Eric Deters as he chooses.

This contract dispute involves a small amount and Eric Deters can pay the claim. He won't lose, but if he did, he could and would.

The trust, set up in 1999, has nothing to do with this dispute. There was no fraudulent transfer. Plaintiff should not be allowed to make false, wild allegations to obtain irrelevant records and harass Eric Deters as part of Chris Wiest's uncontrolled vendetta.

Respectfully Submitted,

*/s/ Alan Statman*
Alan Statman (#84752)
Statman Harris, LLC
35 E. 7th Street, Suite 315
Cincinnati, Ohio 45202
Tel: 513 621-2666
Fax: 513 621-4896
ajstatman@statmanharris.com

*Eric C. Deters*
5247 Madison Pike
Independence, KY 41051
(859) 250-2527

Defendant and
Counterplaintiff Pro Se

## CERTIFICATE OF SERVICE

I certify that on the 19th day of January 2023, the foregoing was filed with the Court's electronic filing system and served via electronic upon:

Christopher Wiest
25 Town Center Blvd.
Suite 104
Crestview Hills, KY 41017
chris@cwiestlaw.com

Zach Gottesman
404 East 12 Street
First Floor
Cincinnati, OH 45202
zg@zgottesmanlaw.com

Thomas Bruns
4555 Lake Forrest Dr.
Suite 330
Cincinnati, OH 45242
tbruns@bcvalaw.com

*/s/ Alan Statman*
Alan Statman (#84752)