**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF KENTUCKY – At Covington**

**Electronically Filed**

| | |
|---|---|
| **COREY R. LEWANDOWKSI, et. al.** | : Case No. 2:22-cv-00106-DLB-CJS |
| **Plaintiffs** | : |
| v. | : |
| **ERIC DETERS, et. al.** | : |
| **Defendants** | : |

<u>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO QUASH**</u>

Plaintiffs Corey R. Lewandowski and Lewandowski Strategic Advisors, LLC ("Plaintiffs") (hereinafter, the "Plaintiff"), pursuant to FRCP 45 moves this Court to Deny Plaintiffs' Motion to quash.

**FACTS**

This suit, as the Court is aware, arose out of the breaches of contract, defamation, and fraud perpetrated by Defendants.  Specifically a fraud count has been lodged against Defendants Deters and the Deters for Governor campaign, that includes the allegation that Mr. Deters, on February 23, 2022, "had more than $5,000,000 in the bank, and had sufficient funds to self-fund his campaign for Governor."  (Pl.'s Compl., Doc. 1, ¶ 15).  Those representations induced Mr. Lewandowski into entering into a contractual agreement with him, and form the basis of the fraud count.  (*Id*. at ¶¶ 15-17, 77-82).  Defendant Deters suffered financial difficulties, and could not make payments when and as due, providing evidence that the statements that he made to induce Plaintiff Lewandowski's reliance were not true.  (*Id*. at ¶¶ 33, 35).

1

As the Court directed (Doc. 40), on October 2, 2023, Plaintiffs served Defendants Deters, Deters for Governor Campaign, and Bulldog Media, Inc. with updated (and narrowed) discovery requests in compliance with this Court's order denying without prejudice Plaintiffs' Motion to Compel.  (Discovery, **Exhibits A-1, A-2, A-3**).  That discovery asked Mr. Deters to "Please identify all financial assets that were in your possession, custody, or control from January 1, 2022 through July 30, 2022 and that (i) were available to fund your governor campaign or (ii) were or would have been included in any statements you made about your wealth to third parties, including to Mr. Lewandowski." *Id.*

The deadline, pursuant to the court order, was October 16, 2023.  Defendants, Mr. Deters, Deters for Governor Campaign, and Bulldog Media, Inc. *never* timely responded to that discovery as directed by the Court.  Counsel for Plaintiffs then sent written correspondence asking for responses, on October 18, 2023, which promoted Mr. Deters to demand a protective order, which Plaintiffs promptly agreed to, and the Court entered on October 23, 2023 (Doc. 42).  Counsel for Plaintiffs again, on October 30, 2023, wrote written correspondence asked for substantive responses to the discovery by follow up letter.  Plaintiffs did not receive substantive responses to the discovery, but did receive financial statements that day dated May 4, 2020 and November 5, 2021.  (Declaration Wiest).  Without getting into the precise substance of those statements (and to avoid yet another dispute with Mr. Deters over the protective order, as he has claimed that these materials are protected and has lodged threats against the undersigned for providing him notification and an opportunity to move to seal the materials),[1] those statements generally reveal or claim financial interests in accounts and assets that are the subject of the subpoena.  *Id.*

---

[1] The undersigned notified Mr. Deters and Mr. Statman, under paragraph 8 of the protective order (Doc. 42) of our intention to file this statement in the record within 10 days, on Monday November 13, 2023, which triggered their obligation, if they wanted the filing sealed, to make a

Upon information and belief, Plaintiffs have cause to believe that several parts of the financial statement are false.  (Declaration Wiest).  Therefore, on November 2, 2023, Plaintiffs' Counsel served subpoenas to the banks and financial institutions that Defendants listed in their financial statement, the law firm entities in Kentucky and Ohio that Defendants claimed an interest in case proceeds on (which Plaintiffs have grounds to question because a non-lawyer is not entitled to have such an ownership interest in), and Plaintiffs significantly question the veracity of Defendants' financial statement.  (Subpoenas, **Doc. 43-1;** Declaration Wiest).

However, Deters' inability to pay, as reflected in the Complaint at paragraphs 33 and 35, are inconsistent with Mr. Deters claims of assets that go to the heart of the fraud claim.  And, recognizing that the scheduling order in this case requires diligence and because Mr. Deters has failed to respond to discovery permitted by this Court's order (Doc. 40), Counsel served these discrete subpoenas at those entities and institutions that he put on his financial statements, which he used to respond to discovery that asked him to "identify all financial assets that were in your possession, custody, or control from January 1, 2022 through July 30, 2022 and that (i) were available to fund your governor campaign or (ii) were or would have been included in any statements you made about your wealth to third parties, including to Mr. Lewandowski."

Each subpoena was duly served by certified mail, return receipt requested, as the law allows and provides for.  (Declaration Wiest).  And each subpoena was for a discrete and narrow period of time: starting November 1, 2021 (and thus ostensibly mirroring the time period within the financial statement).  *Id.*

---

motion within seven days to demonstrate that confidentiality is appropriate under *Shane Group*. They failed to do so.  Instead, Mr. Deters responded with a threatening and harassing email. (See motion to seal, Doc. 45).

**Law and Argument**

1. <u>Defendants Lack Standing as they have no expectation of privacy in a Bank's Business Records or a Law Firm's ownership documents</u>

"The law is clear, absent a claim of privilege, a party has no standing to challenge a subpoena to a nonparty." *Donahoo v. Ohio Dept. of Youth Services*, 211 F.R.D. 303 (N.D. Ohio 2002) (citing *Clayton Brokerage Co., Inc. of St. Louis v. Clement*, 87 F.R.D. 569, 571 (D.C. Md. 1980); *see also Hackmann v. Auto Owners Ins. Co.*, 2009 WL 330314, at *1 (citing *Nova Products, Inc. v. Kisma Video, Inc.*, 220 F.R.D. 238, 241 (S.D. N.Y. 2004); *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979)). Further, it is longstanding law that financial statements and bank records are not the property or papers of the account holder, thus conferring no privilege. The account holder "can assert neither ownership nor possession. Instead, these are the business records of the banks." *United States v. Miller*, 425 U.S. 435, 440 (1976). And while the Financial Privacy Act placed limits on the government's ability to acquire financial records as a "legislative … effort to establish nonconstitutional protection against possible abuses (in the criminal investigative process), … [n]othing in the Act, however, shields the records of a bank customer's transactions from discovery in a civil suit. *Clayton Brokerage Co., Inc. of St. Louis*, 87 F.R.D. at 571 (citing 1978 U.S. Code Cong. & Admin. News p. 9306).

Here, Defendants assert a motion for which they have no standing to assert. Defendants are not the parties to whom the subpoenas were directed, but "[t]he party to whom the subpoena is directed is the only party with standing to oppose it." *Donahoo*, 211 F.R.D. at 306 (citing *U.S. v. Tomison*, 969 F.Supp. 587, 591-592 (E.D. Cal. 1997). On this ground alone, Defendants' motion to quash are without merit as the subpoenas were served upon the financial institutions, law firms, and registered agents, not on Defendants.

4

2.   <u>Defendants' Grounds for Quashing Are Without Merit</u>

<u>Falsehood #1</u>: Defendants first maintain that Plaintiffs "seek[] information the Court has already ruled is not discoverable from parties not relevant at this time." Defendants cite no legal authority nor any provision of the Court Order denying the Motion to Compel in support of their assertion. The Court Order specifically denies the motion to compel *without prejudice* and made no determination as to the discoverability of the matter sought by the subpoenas. (Doc. 40). The Order further encouraged modification of the discovery requests to be more narrow, and Plaintiffs followed this Order by restricting the time frame to the times relevant to this case and specifically requested Defendants to only list Trust assets *if* Defendants used it in the calculation of their net worth when they represented it to Plaintiff Lewandowski in the relevant time period. (Plaintiffs' First Amended Discovery to Defendants, **Exhibits A-1, A-2, and A-3**).

Defendants October 27, 2023 financial statements (Doc. 47), response which included a financial statement that includes trust assets, bank account balances that would have easily enabled Defendants to pay Plaintiffs what they are owed, and an purported ownership interest in a law firm despite Ethics Rules prohibiting ownership from a non-attorney.

<u>Falsehood #2</u>:  Defendants then claim that "[n]one of the subpoenas were properly issued or served." Defendants, likewise, offer no factual basis to support their assertion. Under FRCP 45(b), subpoenas may be served by "[a]ny person who is at least 18 years old and not a party." Fed. R. Civ. P. 45(b)(1). This service may take place "at any place within the United States." Fed. R. Civ. P. 45(b)(2).

Here, Plaintiffs' Counsel served each subpoena by Certified Mail, Return Receipt Requested, to the registered addresses of each business and registered agent according to their Business Filings, with return receipt requested. (*See*, Declaration of Christopher Wiest, **Exhibit**

5

**B**).  And Counsel received green cards back confirming service.  *Id.*  In other words, Plaintiffs served each subpoena in direct compliance with the Federal Rules of Civil Procedure, and Defendants' claim that the subpoenas were improperly issued or served is without merit.[2]  Certified mail service suffices.  *Powell v. Time Warner Cable, Inc.*, 2010 U.S. Dist. LEXIS 138883 (SDOH 2010); *Halawani v. Wolfenbarger*, 2008 U.S. Dist. LEXIS 100482, 2008 WL 5188813, at *3 (E.D. Mich. Dec. 10, 2008) (service of a subpoena by certified mail is sufficient); *Cartier v. Geneve Collections, Inc.*, No. CV 2007-0201, 2008 U.S. Dist. LEXIS 14714, 2008 WL 552855, at *1 (E.D.N.Y. Feb. 27, 2008).  Perhaps the most on point case is *Dyno Nobel, Inc. v. Johnson*, 586 F. Supp. 3d 657 (EDKY 2022), where the Court indicated that where, as here, there is evidence of service, a party cannot be heard to complain.

Falsehood #3:  Third and finally, Defendants claim the "subpoenas seek irrelevant records meant only to harass.  The requests are outrageous and far past relevant discovery."  Again, Defendants cite to no legal authority to support their assertion.  That is because there is no legal authority to support their position.  The Federal Rules of Evidence defines evidence as relevant if "it has *any* tendency to make a fact more or less probably than it would be without the evidence; and the fact is of consequence in determining the action."  Fed. R. Evid. 401 (emphasis added).  "The standard for relevancy is 'extremely liberal' under the Federal Rules of Evidence."  *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009) (citing *United States v. Whittington*, 455 F.3d 736, 738 (6th Cir. 2006)).

Here, the validity of the financial statement is not only minimally relevant, but <u>essential</u> to the validity of the claims presently at issue.  As paragraph 33 and 35 of the complaint make clear,

---

[2] Even assuming *arguendo* that Defendants' claim of improper issuance was meritorious, Defendants do not have standing to quash these subpoenas on that ground because, as argued *supra*, only the entity to which the subpoena is directed has standing to present such a challenge.

central to the breach of contract and fraud claims is Defendant Deters' statements of financial wealth that induced the Plaintiffs to enter into an agreement with him and the campaign, which was met, mere months later, with an  inability to pay Plaintiffs for the services rendered.  These paragraphs are inconsistent with Mr. Deters's claims of assets that go to the heart of the fraud claim.

The Western District of Kentucky has explained why arguments directed towards the merits of claims, or the alleged lack thereof, is an invalid basis to resist discovery.  *Brown v. Tax Ease Lien Servicing, LLC*, 2016 U.S. Dist. LEXIS 195843 *29 (WDKY 2016) ("…relevancy relates to existing claims or defenses, not merely to those existing claims or defenses which may at some future, unstated date survive a possible motion to dismiss.").  With respect to the **discovery** issue actually before the Court, Defendants' Response makes the factually and legally spurious assertion that the requested discovery is nothing more than a "fishing expedition." Defendants do so without ever defining "relevance" for purposes of discovery, or articulating why the requested financial discovery is not relevant to any of the claims actually plead.  FRCP 26(b) governs the scope of discovery and provides, generally, that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense … Information within this scope of discovery need not be admissible in evidence to be discoverable."  Case law is clear that "a plaintiff should not be denied access to information necessary to establish her claim…"  *Lestienne v. Layne*, 2011 U.S. Dist. LEXIS 116228, 2011 WL 4744912 at *2 (W.D. Ky. October 7, 2011) (*citing Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007).

Generally speaking, courts should construe Rule 26 "relevance" broadly. *Invesco Inst'l (N.A.), Inc. v. Paas*, 244 F.R.D. 374, 380 (W.D. Ky. 2007); *Lewis v. ACB Bus. Servs., Inc.*, 135

F.3d 389, 402 (6th Cir. 1998). "Any information that bears upon the likelihood of any issue that is or is likely to be raised in the case is **relevant** for purposes of discovery." *Locke v. Swift Transp. Co. of Ariz., LLC*, 2019 U.S. Dist. LEXIS 17412 (KYWD 2019). (emphasis added). "**Relevant** material for the purpose of discovery will encompass any matter **that may bear upon, or reasonably could lead to** other matters that could bear upon, any issue that is or likely may be raised in the case." *Roach v. Hughes, et. al.*, 4:13-CV-00136-JHM-HBB, Docket #12, 2014 U.S. Dist. LEXIS 200815 (W.D. Ky. May 7, 2014). (emphasis added). The party resisting discovery bears a heavy burden to "establish either that the material requested does not fall within the broad scope of relevance under Rule 26(b)(1) or is so marginally relevant that the potential harm resulting from the production clearly outweighs the presumption in favor of disclosure." *Invesco Inst'l (N.A.), Inc.*, 244 F.R.D. 374, 380.

Numerous cases address instances where, as is the case here, discovery is directed to financial information related to allegations of fraud in making financial-related inducements, as Mr. Deters did. *Brown v. Tax Ease Lien Servicing, LLC*, 2016 U.S. Dist. LEXIS 195843 *29 (WDKY 2016); *Grayiel v. Aio Holdings*, No. 3:15-CV-00821-TBR-LLK, 2017 U.S. Dist. LEXIS 233617 (W.D. Ky. May 2, 2017). The reasoning from the *Graviel* Court applies equally here: "[w]here personal financial information is sought to prove a case in chief or an element thereof, the information can be deemed relevant and can be ordered to be produced." *Id.* at *7, *citing Alvarez v. Wallace*, 107 F.R.D. 658, 661 (W.D. Tex. 1985). And the *Graviel* Court observed it was not alone in ordering disclosure where, as here, the claims touch upon the financial information of a party. *Id., citing Paws Up Ranch, LLC v. Green*, 2013 U.S. Dist. LEXIS 167174, 2013 WL 6184940 (D. Nev. 2014) (disclosure of personal financial records was appropriate where allegations of fraud, racketeering, conversion and unjust enrichment had been

8

made); *State Farm Mut. Auto. Ins. Co. v. CPT Medical Services, P.C.*, 375 F.Supp.2d 141, 156-157 (E.D.N.Y.2005) (personal financial records are discoverable where claims of common law fraud have been made); and *Constitution Bank v. Levine*, 151 F.R.D. 278 (E.D.Pa.1993) (finding that financial records are relevant where claims of fraudulent conveyance of assets have been alleged).

In fact, the *Graviel* Court left no doubt about the discovery issue here when it stated that "[a]s an initial matter, Defendant's financial records go to the core issues in this case and are relevant to multiple instances of deception alleged in the Complaint." *Id.* at *10.  There, as here, there were allegations of fraud.  *Id.* at *2.  The Court ultimately directed that financial information be turned over in order because "evidence regarding Defendant's earnings and/or assets during the period of time at issue may be relevant." *Id.* at *20.

Concluding the matter, the *Graviel* Court stated that "[i]n sum, there is abundant authority for the proposition that personal financial information is relevant and discoverable in cases alleging fraud, conspiracy to commit fraud, and fraudulent transfers by an individual or potentially by any claim that directly places an individual's financial condition and net worth at issue." *Id.* at *8-*9.  In sum, *Graviel*  is this case,  Defendants' illogical argument  to the contrary notwithstanding.

*MedCity Rehab. Servs., LLC v. State Farm Mut. Auto. Ins. Co.*, 2013 U.S. Dist. LEXIS 64670 at *20-*22 (EDMI 2013), is yet another cases addressing a discovery dispute where the claims at issue involved allegations of fraud.  ("[t]he bank records of MedCity and Dr. Teklehaimanot's and Collins's professional corporations are relevant to establishing the financial relationships among Dr. Teklehaimanot, MedCity, Collins, and In & Out, among others. The

bank records will also show the parties' financial motive in perpetuating the fraud scheme…").
Again, so too here.

Finally, as is the case here, in *Phx. Life Ins. Co. v. Raider-Dennis Agency, Inc.*, 2010 U.S. Dist. LEXIS 42826 *5 (E.D. Mich. Apr. 30, 2010), the court compelled the production of financial information covering a 15-month look-back prior to the alleged misrepresentation of a party's financial position in order to address the issue of "whether Counter-Plaintiff misrepresented his net worth."  That is this case.

Plaintiffs are not the only individuals who believe the validity of these assets are relevant to the case at hand, but Defendants conceded their relevancy when they disclosed them in response to the following discovery request: "Please identify all financial assets that were in your possession, custody, or control from January 1, 2022 through July 30, 2022 and that (i) were available to fund your governor campaign or (ii) were or would have been included in any statements you made about your wealth to third parties, including to Mr. Lewandowski."  By responding to Discovery with the financial statement that listed these assets (Doc. 47), Defendants admitted that they were either available to fund the governor campaign or would have been included in any statements Defendant Deters made about his wealth to third parties, including Mr. Lewandowski.

Surely, bank records reflecting the accuracy, or lack thereof, of this financial statement "has *any* tendency to make a fact more or less probably than it would be without the evidence; and the fact is of consequence in determining the action."  Fed. R. Evid. 401 (emphasis added).  In fact, these records are now central to proving (or disproving) the fraud claim against Defendants.

Further, to allow for Defendants to now assert that the records requested in the subpoena are irrelevant would be to ultimately allow Defendants to raise an objection to Plaintiffs' discovery

10

requests despite the fact that they, in violation of this Court's order, failed to respond within ten business days and have *still* not complied – Plaintiffs simply have endeavored a work-around to Defendants' obstructionism to get to the proof of their fraud – and predictably – knowing that this evidence will give the game away – they object yet again.

### Conclusion

Plaintiffs issued the subpoenas in question to remedy the ongoing deficiencies in Defendants' discovery responses in a discrete, narrow manner that would neither disrupt the case, nor waste the Court's time.  Unfortunately, Defendants have elected to consume judicial resources in an attempt to quash subpoenas they have no standing to challenge by means of conclusory statements with no basis in law or fact.  As shown, the subpoenas are relevant, were properly served, and seeks information the Court has not ruled to be beyond the scope of discovery.  For all of these reasons, this Court should deny Defendants' Motion to Quash.

Respectfully Submitted,

/s/Christopher Wiest_____
Christopher Wiest (KBA 90725)
25 Town Center Blvd, STE 104
Crestview Hills, KY 41017
513-257-1895 (v)
chris@cwiestlaw.com

/s/Thomas Bruns_____
Thomas B. Bruns (KBA 84985)
4555 Lake Forrest Dr., Suite 330
Cincinnati, OH 45242
tbruns@bcvalaw.com
513-312-9890 (c)

/s/Zach Gottesman_____
Zach Gottesman (KBA 86288)
404 East 12 St., First Floor
Cincinnati, OH 45202
zg@zgottesmanlaw.com
*Attorneys for Plaintiffs*

11

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing upon all counsel for the Defendants, this 27

day of November, 2023 via electronic and ordinary U.S. mail.

/s/Christopher Wiest
Christopher Wiest (KBA #90725)

12