**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY – At Covington**
*Electronically Filed*

| | |
|---|---|
| **COREY R. LEWANDOWKSI, et. al.** | : Case No. 2:22-cv-00106-DLB-CJS |
| **Plaintiffs** | : |
| v. | : |
| **ERIC DETERS, et. al.** | : |
| **Defendants** | : |

## PLAINTIFFS' RESPONSE TO DEFENDANT ERIC DETERS' S MOTION FOR SUMMARY JUDGMENT[1] WITH THE DECLARATIONS OF COREY LEWANDOWSKI AND CHRISTOPHER WIEST, ESQ. IN SUPPORT

Plaintiff, through Counsel provides this memorandum in opposition to Eric Deters' Motion for Partial Summary Judgment on the fraud count. (Doc. 48). Before we recount the factual history, two points bear mentioning. First, Mr. Lewandowski's declaration itself is sufficient to generate a genuine issue of material fact for trial; and second, *for more than a year,* Mr. Deters has single-handedly frustrated Plaintiffs' discovery directed to some of the very factual issues raised by his Motion. A declaration of counsel, pursuant to FRCP 56(d), is attached which outlines Mr. Deters' machinations to date and the discovery still needed on this issue.

---

[1] Mr. Deters is the only signer on this pleading; and thus, while the Motion purports to be on behalf of "Defendants," it is not signed by an attorney for any other party. To the extent that it is filed on behalf of the Campaign defendant, as a fraud claim was plead against it, we move to strike the Motion under FRCP 11(a). *Moro Aircraft Leasing, Inc. v. Keith*, 789 F. Supp. 2d 841, 845 (N.D. Ohio 2011). "It has been the law for the better part of two centuries . . . that a corporation may appear in federal courts only through licensed counsel." *Rowland v. California Men's Colony*, 506 U.S. 194, 201-202 (1993); *see also Doherty v. American Motors Corp.*, 728 F.2d 334, 340 (6th Cir. 1984) ("The rule of this circuit is that a corporation cannot appear in federal court except through an attorney."). Moreover, "[a] pleading by a corporation that is not signed by an attorney is treated as unsigned for Rule 11(a) purposes." *White v. Smith, Dean & Assocs., Inc.*, 2010 U.S. Dist. LEXIS 30148 at *2-*3, 2010 WL 795967 (S.D. Ohio Mar. 2, 2010). However, if the Court even is inclined to consider Mr. Deters' Motion as including the Campaign, this response is intended to address it substantively.

## I.   FACTUAL BACKGROUND

### A.  Facts, as contained in Mr. Lewandowski's declaration

Mr. Corey Lewandowski, and his business, Lewandowski Strategic Advisors, LLC (which is solely owned by him), are the Plaintiffs in this matter.  (Dec. Lewandowski at ¶¶ 1-2).  Mr. Lewandowski first met Mr. Deters at an expensive Mar-A-Lago fundraising event on or about February 23, 2022.  (*Id.* at ¶3).  The event cost $100,000 to attend.  *Id.*

On first contact, Mr. Deters told Mr. Lewandowski that he, Mr. Deters, had paid the $100,000 for his ability to attend that event, all in hopes that he would receive former President Donald J. Trump's endorsement for his candidacy for Governor of Kentucky.  (*Id.* at ¶4).  At this same event, and during their conversation on February 23, 2022, at Mar-A-Lago, Mr. Deters told Mr. Lewandowski that he was interested in hiring Mr. Lewandowski to be his chief campaign consultant.   (*Id.* at ¶5).

Mr. Deters and Mr. Lewandowski then generally discussed the race for Governor, as it was known then that Daniel Cameron, Kentucky's Attorney General, and Kelly Craft, who is married to billionaire coal executive Joe Craft, were going to be running.  (*Id.* at ¶6).  In the course of that conversation, Mr. Lewandowski told Mr. Deters that Daniel Cameron, Kentucky's Attorney General, who had national and state name recognition, and Mrs. Craft were going to be formidable candidates, and that the primary cycle alone would involve millions being spent by each candidate. (*Id.* At ¶7).  Mr. Lewandowski told Mr. Deters that he expected Mrs. Craft to spend at least five million in the primary because she was running against candidates who were already familiar to Kentucky primary voters.  (*Id.* at ¶8).[2]

---

[2] Interestingly, Mrs. Craft spent more than $12 million.
https://secure.kentucky.gov/kref/publicsearch/CandidateSearch?FirstName=kelly&LastName=cr

Because Mr. Deters did not have name statewide recognition, Mr. Lewandowski told him that he would need to spend at least five million dollars in the primary to be viable. (*Id.* at ¶9). Mr. Lewandowski also told Mr. Deters that Mr. Lewandowski was not interested in serving as a consultant to his campaign unless Mr. Deters had $5,000,000 to invest. *Id.* Further, Mr. Lewandowski explained that he was not interested in overseeing a campaign that had no chance of winning, which would be the case if Mr. Deters did not have $5,000,000 ready to invest. *Id.*

In response, Mr. Deters told Mr. Lewandowski that he, Mr. Deters, was a well-respected Kentucky attorney, that he was independently wealthy and, of particular significance, that he, Mr. Deters, had more than $5,000,000 in the bank, and thus he had sufficient funds to self-fund his campaign for Governor. (*Id.* at ¶10). Those representations by Mr. Deters, and particularly that Mr. Deters had $5,000,000 cash available, were material and central to Mr. Lewandowski's agreement for himself, and his firm, Lewandowski Strategic Advisors, LLC, to agree to join Mr. Deters' campaign as a consultant. (*Id.* at ¶11).

To be clear, if Mr. Deters did not have $5,000,000 cash in the bank, then Mr. Lewandowski never would have agreed to serve as Mr. Deters' consultant. (*Id.* at 12). Mere indications that he, Mr. Deters, had real property, interests in ongoing lawsuits, or promised to fundraise would not have resulted in Mr. Lewandowski's agreement to join the Deters' team in a senior capacity – because candidates often make forward looking promises that turn out not to be true – and ready cash is needed early in a campaign to be successful. (*Id.* at ¶12). Mr. Lewandowski tries to determine that a candidate is viable and can win before he takes on a representation because he limits his clients to ensure full access and success. (*Id.* at ¶13).

---

aft&ElectionDate=01%2F01%2F0001&PoliticalParty=&ExemptionStatus=All&IsActiveFlag= (last accessed 12/21/2023).

Mr. Lewandowski also knew that, like most candidates he represents, his agreement to come on board with Mr. Deters would be used by Mr. Deters both to make contact with former President Donald Trump and to advertise/raise money. (*Id.* at ¶14).

Due to where Mr. Deters was located when he made the above statements, a major Republican fundraiser (costing $100,000 a head to attend) with other wealthy individuals in attendance, Mr. Lewandowski had no reason to disbelieve Mr. Deters' representations, and he justifiably relied upon them to enter into a contractual relationship with Mr. Deters and the Deters' Campaign. (*Id.* at ¶15).

On or about March 7, 2022, Plaintiff Lewandowski Strategic Advisors, LLC entered into an agreement (hereinafter "Agreement") with Eric C. Deters and the Deters' Campaign. That Agreement was entered principally based on the statements Mr. Deters made with particular emphasis that he had $5,000,000 immediately ready to deploy for the campaign. (*Id.* at ¶16). Under Paragraph 10 of the Agreement, compensation was due in the amount of $17,500 per month, with the first payment for March, 2022, due immediately, and remaining payments of $17,500 per month due on the first business day of each subsequent month. (*Id.* at ¶17).

Deters and the Campaign paid the $17,500 due for March, 2022. (*Id.* at ¶18). But then Mr. Deters and the Campaign did not pay the amount due for April, 2022. (*Id.* at ¶19). Mr. Lewandowski questioned this, but Mr. Deters indicated he was in the process of moving funds around and indicated he would make that payment up in May, 2022. *Id.*

At Mr. Lewandowski's suggestion and with Mr. Deters' approval, Mr. Lewandowski traveled to Kentucky in May, 2022, stayed with Mr. Deters, and gave a multiple-hour presentation to Mr. Deters' most ardent supporters about a plan to win the race for Governor. (*Id.* at ¶20). Mr. Deters approved all travel expenses in advance of that trip for reimbursement. *Id.*

4

In May, 2022, and rather than fully paying what he owed, Mr. Deters and the Campaign paid $17,100 for May and nothing for the April, 2022 payment.  (*Id.* at ¶21).

That prompted an intense discussion, and in late May, Mr. Lewandowski confronted Mr. Deters about this, pointed out that Mr. Deters had told Mr. Lewandowski that he had $5,000,000 in the bank in February, and at that point, Mr. Deters told Mr. Lewandowski that he "had plenty of money for the campaign but maybe not $5,000,000."  (*Id.* at ¶22).  Mr. Deters also told Mr. Lewandowski that he, Mr. Deters, was working on a project about a terrorist and when it comes out, it was going to pay him millions and he would use the public relations surrounding that launch and the money from it to propel him to victory.  *Id.*  Mr. Deters further told Mr. Lewandowski he went shopping for a Ferrari but decided against the purchase because it wouldn't look good on the campaign trail.  *Id.*  Following their confrontation, Mr. Deters also stated on numerous occasions in May that "I will pay you – don't worry *just can't* pay you right now."  *Id.* (emphasis added). Mr. Lewandowski asked Mr. Deters if he had spent millions of dollars over the prior months and Mr. Deters admitted that he had not.  *Id.*

At that point, Mr. Lewandowski learned and/or surmised that Mr. Deters was not a licensed Kentucky attorney, had his licenses suspended and/or revoked in Kentucky and Ohio for various acts of misconduct, that he was not independently wealthy as he claimed, and he plainly did not have and never had, more than $5,000,000 in the bank, and Mr. Deters could not self-fund his campaign for Governor.  (*Id.* at ¶23).

Thus, on June 1, 2022, Mr. Lewandowski, on behalf of Lewandowski Strategic Advisors, LLC, provided, as required, written notice of termination of the agreement with Eric C. Deters and the Campaign, effective July 1, 2022.  (*Id.* at ¶24).  Mr. Lewandowski and the business was significantly harmed by Mr. Deters' fraudulent representations: (i) first, he was not paid what was

owed; (ii) worse, he ended up working with a candidate/client who had a significant troubled past, who lost his law license for a variety of misconduct, and then (iii) Mr. Deters put out a false video about Mr. Lewandowski that has also potentially hurt his business.  (*Id.* at ¶25).  Losses from Mr. Deters' fraud far exceed $100,000 and have hurt Mr. Lewandowski's relationship with the Craft's whom he has known and worked with for over a decade.  *Id.*

Finally, Mr. Lewandowski addressed Mr. Deters' allegations that, after-the-fact, he reported spending $778,475.03 on the campaign.  (*Id.* at ¶26).  While Mr. Lewandowski does not know where those funds came from, he does know that if Mr. Deters had informed him at the outset that Mr. Deters intended to run a shoe-string campaign, which  is what spending $778,475.03 in a statewide campaign for Kentucky Governor amounts to, Mr. Lewandowski never would have undertaken to represent Mr. Deters given the field of candidates Mr. Lewandowski was aware of in the race.  *Id.*

**B. The procedural history and efforts to obtain necessary discovery, to date, which have been frustrated by Mr. Deters to date**

This lawsuit was filed on August 15, 2022.  (Compl, Doc. 1).  The parties filed a FRCP 26(f) conference report on September 23, 2022.  (FRCP 26 Report, Doc. 14).

On October 7, 2022, two weeks later, Plaintiffs propounded written discovery to the Defendants, which included, specifically, discovery directed at Mr. Deters and the Campaign over their finances and accounts, which included particular discovery seeking the identification and production of financial account related information, to include the period of the six months prior to the fraudulent representations, to six months after the termination of the agreement between Plaintiffs and Defendants in June, 2022. (Declaration, attached to Motion to Compel, Doc. 23-1, at PageID#264-299).   Predictably, Mr. Deters objected to any financial related discovery, prompting Plaintiffs to undertake dispute resolution procedures including multiple letters and a

6

call, and, eventually, a motion to compel that was filed on December 14, 2022. (Motion to Compel and Declaration, Doc. 23, Doc. 23-1, PageID#240-349). Defendants responded on January 19, 2023 (Doc. 30) and Plaintiffs replied on January 24, 2023 (Doc. 31). That also prompted a motion by Plaintiffs on February 2, 2023, to modify the scheduling order. (Doc. 32).

On September 29, 2023, approximately eight months later, the magistrate judge denied the motion to compel, without prejudice, and directed Plaintiffs to re-serve their discovery within 10 business days. (Doc. 40). Plaintiffs immediately did so on October 2, 2023. (Doc. 46-1; see, also, Declaration Wiest, at Doc. 46-2, PageID#557-560). This time, Plaintiffs narrowed the discovery, asking Mr. Deters to "Please identify all financial assets that were in your possession, custody, or control from January 1, 2022 through July 30, 2022 and that (i) were available to fund your governor campaign or (ii) were or would have been included in any statements you made about your wealth to third parties, including to Mr. Lewandowski." (Interrogatory No. 8 at Doc. 46-1, PageID#531). Account statements for these assets were also asked to be produced. (RFP 7, Doc. 46-1, PageID#532). Plaintiffs also asked for identification of two years of assets or accounts. (Interrogatory No. 9 at Doc. 46-1, PageID#532). And Plaintiffs directed production requests at such accounts. (RFP 20, 21, 23, Doc. 46-1, PageID#533-534).

Predictably, Mr. Deters did not respond to this discovery – prompting counsel for Plaintiffs to send three separate letters in October of this year in order to obtain compliance. (Declaration Wiest at Doc. 46-2, PageID#557-560). Ultimately, Mr. Deters only produced what he purported to be a listing of his accounts (by name and what he claimed was in each) dated November, 2021. *Id.*

Undeterred, Plaintiffs then issued subpoenas to financial institutions where Mr. Deters claimed he had substantial assets during the relevant time period. *Id.* Predictably, and without

7

standing to do so, on November 14, 2023, Mr. Deters moved to quash those subpoenas. (Doc.43).

Plaintiffs responded on November 27, 2023, demonstrating the central relevance of the information, and that Mr. Deters lacked standing to quash the subpoenas. (Doc. 46).

Mr. Deters gives the game away in his Reply to that Motion filed on December 12, 2023, in which he indicates that his purpose of the present motion for partial summary judgment is intended to cut off Plaintiffs' ability to obtain the discovery that it has diligently pursued for over a year. (Doc. 50).

As Mr. Wiest's declaration, attached hereto, indicates, Plaintiffs have undertaken significant and diligent efforts to obtain discovery related to what Mr. Deters had in the bank when he made the false representations to Mr. Lewandowski in February, 2022 (as well as the months preceding those representations and the months that followed them), all in an effort to demonstrate that Mr. Deters made knowingly false statements about his finances at the heart of the fraud case. (Declaration Wiest, hereto). Plaintiffs likewise contacted the magistrate judge's chambers about the failure by Mr. Deters and the Campaign to respond to the October 2, 2023 discovery, but were told that such a conference would not be scheduled, that Plaintiffs cannot file a motion to compel those responses, and the Court would take up the issue in connection with the pending motion to quash. *Id.*

Plaintiffs likewise need to depose Mr. Deters once the financial information is obtained, have scheduled that for February 19, 2024 (assuming that Plaintiffs obtain the information in time), and Plaintiffs have likewise issued subpoenas to Mr. Deters' spouse and two of his assistants (Ms. Little and Ms. York), as well as one of his former assistants, who counsel believe have information relative to not only Mr. Deters' financial situation, but more importantly his knowledge in the relevant time period. (Declaration Wiest, hereto). Those depositions are tentatively scheduled

8

for February 19 and 20, 2024. *Id.* (We say tentatively, because if past is prologue, we expect Mr. Deters to take steps to attempt to frustrate examination of these witnesses).

## II.    LAW AND ARGUMENT

### A.  Summary judgment standard

In considering a motion for summary judgment, the court must view the factual evidence in favor of the non-moving party and draw all reasonable inferences in the non-moving party's favor. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc). Before we get too far into that analysis, it is notable that we are not certain what Mr. Deters filed conventionally with the Court (Doc. 49), as he has never served those pleadings on us. (Declaration Wiest, hereto). That, in turns, prompts our request to strike them, as they were not served on us pursuant to FRCP 5. We also observe that unauthenticated materials (which we assume they are, but are not sure) fail to meet the requirements of FRCP 56(c).

### B.  The standard for a FRCP 56(d) declaration is met here, and adjudication of this motion should be continued generally until the required discovery is obtained

Fed. R. Civ. P. 56(d) provides that if a nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." "The burden is on the party seeking additional discovery to demonstrate why such discovery is necessary." *Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004).

While the nonmoving party usually must file a formal affidavit that states "the materials [it] hopes to obtain with further discovery," *id.*, FRCP 56(d) is also satisfied if the party complies with its "substance and purpose" by "informing the district court of her need for discovery prior

9

to a decision on the summary judgment motion." *Moore v. Shelby Cty.*, 718 F. App'x 315, 319 (6th Cir. 2017) (internal quotation marks and formatting omitted).

In *Moore*, the Sixth Circuit concluded that the plaintiff made a sufficient request for additional discovery when she did so in a summary judgment motion but did not file a FRCP 56(d) affidavit. Id. Granting summary judgment simply because the plaintiff did not file a "redundant" FRCP 56(d) affidavit, the court held, would "unduly exalt form over substance." *Id.*

FRCP 56(d) considers the drastic nature of granting summary judgment by allowing the Court to ensure that it "affords the parties adequate time for discovery, in light of the circumstances of the case." *Plott v. Gen. Motors Corp., Packard Elec. Div.*, 71 F.3d 1190, 1195 (6th Cir. 1995). FRCP 56(d) offers the Court broad discretion to grant or deny additional time before ruling on summary judgment so long as its decision is not "arbitrary, unjustifiable, or clearly unreasonable." *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 623 (6th Cir. 2014).

When, as here, the party seeking relief under FRCP 56(d) has complied with its procedural requirements, "the Sixth Circuit has provided guidance as to the factors a court should evaluate in considering whether to permit the requested discovery." *Cressend v. Waugh*, No. 2:09-CV-01060, 2011 U.S. Dist. LEXIS 24780, 2011 WL 883059, at *2 (S.D. Ohio Mar. 11, 2011) (*citing CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008)).

These factors include (1) when the party seeking discovery learned of the issue that is the subject of the desired discovery; (2) whether the desired discovery would change the ruling; (3) how long the discovery period has lasted; (4) whether the party seeking discovery was dilatory in its discovery efforts; and (5) whether the party moving for summary judgment was responsive to discovery requests. *Id.* (internal quotation marks, formatting, and citation omitted). If the party seeking relief under FRCP 56(d) has not received "a full opportunity to conduct discovery," denial

10

of that party's FRCP 56(d) motion and ruling on a summary judgment motion would likely constitute an abuse of discretion. *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004) (internal quotation marks omitted).

As to the first factor, here, discovery on Mr. Deters financial status, in light of his representations to Mr. Lewandowski, began *immediately* in this case.

As to the second factor, here, where Mr. Deters admitted to Mr. Lewandowski that he was "unable" to make a small payment despite his previous representation of 5 million dollars in the bank – showing his entire wealth statements were (and are) a flagrant lie (Declaration Lewandowski at ¶¶ 22-23), such information is central to the fraud claims against him.  If, as Plaintiffs believe, bank statements show substantially less than 5-million-dollar balances, well, that is probative not only as to falsity, but knowledge as well.  After all, no one is confused about whether they have 5 million in the bank, or not. Without question, the bank balances would go to the truth of the statements any Mr. Deters' knowledge of their falsity.

As for the third factor, while the discovery period has been open for a period of time, Plaintiffs have been trying for over a year to obtain information they are entitled to, all to be frustrated by Defendants who have, successfully to date, obstructed their ability to obtain discovery.  (Motion to Compel and Declaration, Doc. 23, Doc. 23-1, PageID#240-349; Doc. 40; Doc. 43; Doc. 46).  This factor, on this record, favors Plaintiffs and not Defendants, who are the cause of the delay and obstruction.

As for the fifth factor, it is clear that Mr. Deters has not promptly (or ever) responded to critical discovery requests.  (Motion to Compel and Declaration, Doc. 23, Doc. 23-1, PageID#240-349; Doc. 40; Doc. 43; Doc. 46).  Despite Plaintiffs' efforts to be diligent – starting discovery right away and attempting multiple ways, as promptly as they could, to obtain the basic discovery they

11

required for *more than a year* – all in the face of Defendants who continue to this day to obstruct discovery. (Motion to Compel and Declaration, Doc. 23, Doc. 23-1, PageID#240-349; Order on same, Doc. 40; Motion to Quash, Doc. 43; Response, Doc. 46).

It bears noting that Mr. Deters has a long, well documented history of abusing the judicial system and obstructing discovery, particularly any inquiry into his finances, even when what he says or admits seems to be contradictory to evidence. *See, e.g., Deters v. Ky. Bar Ass'n*, 627 S.W.3d 917, 924-925 (Ky. 2021) ("As rhetorically posed by the Committee, 'How did this happen? What part of the $94 million verdicts was distributed, if any, to Deters?' This testimony was in contrast to his testimony at the earlier hearing that he was broke. As noted by the Committee, Deters refused to cooperate and provide documentation."). That same decision notes a pattern – present here – of blatant disregard of the rules. The fifth factor plainly favors Plaintiffs.

The Court should continue, generally, any adjudication of this motion, until after Plaintiffs: (i) obtain bank and/or financial statements from Mr. Deters (or third parties) evincing his financial situation in 2022; (ii) then depose Mr. Deters regarding those financial statements; (iii) depose his three assistants and his spouse about those finances and any statements Mr. Deters made related to same.

**C. Mr. Lewandowski's declaration is itself sufficient to create genuine issues of material fact for trial**

Fraud through misrepresentation requires proof that: (1) the defendant made a material representation to the plaintiff; (2) the representation was false; (3) the defendant knew the representation to be false or made it with reckless disregard for its truth or falsity; (4) the defendant intended to induce the plaintiff to act upon the misrepresentation; (5) the plaintiff reasonably relied upon the misrepresentation; and (6) the misrepresentation caused injury to the plaintiff. *Flegles,*

*Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009); *United Parcel Service Co. v. Rickert*, 996 S.W.2d 464, 46 6 Ky. L. Summary 44 (Ky. 1999).

1.   Evidence establishes Mr. Deters made material representations to the Plaintiffs

Here, Mr. Lewandowski's declaration demonstrates that Mr. Deters made material representations to him: namely that Mr. Deters was a well-respected Kentucky attorney, that Mr. Deters was independently wealthy, and, of particular significance, that Mr. Deters had more than $5,000,000 in the bank, and Mr. Deters thus had the funds sufficient to self-fund his campaign for Governor. (Dec. Lewandowski at ¶10). Those representations, and particularly that Mr. Deters had $5,000,000 cash available, were material and central to Mr. Lewandowski's agreement for himself, and his firm, Lewandowski Strategic Advisors, LLC, to agree to join Mr. Deters' campaign as a consultant. (*Id.* at ¶11). Other portions of Mr. Lewandowski's declaration establish the clear materiality of the statements – particularly the one about $5,000,000 in the bank. (*Id.* at ¶¶ 12, 13, 16).

2.   Evidence establishes Mr. Deters made false statements to the Plaintiffs

What about falsity of the foregoing material statements? The evidence here is that the *very next month*, in April, 2022, Mr. Deters failed to pay what was owed, and his stated excuse was that he was moving funds around. (*Id.* at ¶19). And then, in May, 2021, Mr. Deters again failed to pay what he owed, demonstrating, or raising an inference, that he did not even have $17,500, much less $5,000,000. *Id.* at ¶21.

That, in turn, prompted a confrontation, in which Mr. Deters admitted that he did not have $5,000,000 in the bank, which was followed by a series of admissions that he, Mr. Deters, "***just can't*** pay [Lewandowski] right now." (*Id.* at ¶22). That statement, "can't" evinces an inability to pay – and an admission that not only did Mr. Deters not have $5,000,000 in the bank at the time

13

(or even $17,500), but in light of Mr. Deters' further admission that he had not spent millions in the prior months, that he *never had those funds.* *Id.* Plaintiffs have adduced sufficient evidence of falsity.

### 3.   Evidence establishes Mr. Deters made false statements to Plaintiffs

In the same vein, Mr. Deters' statements evidence knowledge of falsity – this was no simple misstatement, and his excuses about moving funds around or about him having millions but then *not being able to pay* $17,500, refute any truth concerning Mr. Deters' having millions in the bank.

Mr. Deters' excuses and misdirection (*id.* at ¶19), followed by his admissions, late in the game that he was unable to pay and did not spend money (*id.* at ¶22)., give rise to a reasonable inference in favor of Plaintiffs that Mr. Deters never had $5,000,000 or anything near to it, and it equally establishes his knowledge/recklessness in making the statements, and scienter.  *United States v. Boggs*, 737 Fed. Appx. 243 (6th Cir. 2018) (drawing similar inferences on similar evidence to sustain criminal fraud conviction); *United States v. Bauer*, 82 F.4th 522 (6th Cir. 2023) (discussing circumstantial evidence).  The best, evidence, of course, would be his bank statements, but, as noted, we have been obstructed to date by Mr. Deters from obtaining those.

In *Frank v. Dana Corp.*, 646 F.3d 954, 961-962 (6th Cir. 2011), the Court addressed false statements of finances, and found that misstatements of finances followed by failure to pay debts when and as due months later was so egregious that knowledge of falsity could be inferred.  The same is true here.  The inability to make a $17,500 payment three months after making a representation that there was $5,000,000 in the bank, despite not having spent those millions in the interim, is a strong inference that Mr. Deters knew, or was reckless in not knowing, that his previous representations were false.  *See, also, Churches of Christ in Christian Union v.*

14

*Evangelical Benefit Trust*, 2009 U.S. Dist. LEXIS 63058 (SDOH 2009) (drawing similar inferences).

And we submit that there is yet further evidence of both falsity and intent: Mr. Deters' own litigation conduct in this case, which has been exemplified by fairly heroic efforts to prevent Plaintiffs from obtaining central evidence of Mr. Deters' financial status.  (Motion to Compel and Declaration, Doc. 23, Doc. 23-1, PageID#240-349; Order on same, Doc. 40; Motion to Quash, Doc. 43; Response, Doc. 46).  Simply put, an honest man would have produced those statements under a confidentiality agreement at the outset.

    4.   <u>Evidence establishes Mr. Deters intended Plaintiffs to act upon the misrepresentations</u>

Mr. Lewandowski has likewise evinced sufficient evidence that Mr. Deters intended Mr. Lewandowski to act upon the misrepresentations: Mr. Lewandowski first told Mr. Deters that Mr. Lewandowski was not interested in serving as a consultant to his campaign unless Mr. Deters had $5,000,000 to invest.  (Dec. Lewandowski at ¶9).  And Mr. Lewandowski explained that Mr. Lewandowski was not interested in overseeing a campaign that had no chance of winning, which would be the case if Mr. Deters did not have $5,000,000 ready to invest.  *Id.*  In response, Mr. Deters made the misrepresentations at issue.  (*Id.* at ¶10).  And it is clear that Mr. Deters received a benefit from this: trading on Mr. Lewandowski's well-earned name for Mr. Deters' campaign purposes.  (*Id.* at ¶14).

That is sufficient evidence of an intention by Mr. Deters for Mr. Lewandowski to rely upon his misrepresentations, meeting the elements.  *McCarthy v. Ameritech Publ., Inc.*, 763 F.3d 469, 48-481 (6th Cir. 2014) (finding sufficient evidence of an intention to induce where the other party receives a benefit).

15

5. <u>Evidence establishes Plaintiffs reasonably relied on Mr. Deters' misrepresentations</u>

Because of where Mr. Deters was located when he made his misrepresentations, a major Republican fundraiser (that cost $100,000 a head to attend), with other wealthy individuals in attendance, Mr. Lewandowski had no reason to disbelieve Mr. Deters' misrepresentations, and Mr. Lewandowski justifiably relied upon them to enter into a contractual relationship with Mr. Deters and his campaign. (Dec. Lewandowski at ¶15). This testimony is sufficient to meet this element.

6. <u>Evidence establishes Plaintiffs' injuries by Mr. Deters' misrepresentations</u>

Mr. Lewandowski and the business were significantly harmed by Mr. Deters' fraudulent representations: (i) first, Mr. Lewandowski was not paid what was owed; (ii) worse, he ended up working with a candidate/client who had a significant troubled past, who lost his law license for a variety of misconduct, and then (iii) Mr. Deters put out a false video about Mr. Lewandowski that has also hurt his business. (*Id.* at ¶25). Losses from this fraud far exceed $100,000 and have hurt Mr. Lewandowski's relationship with the Craft's whom Mr. Lewandowski has known and worked with for over a decade. *Id.*

## III.   CONCLUSION

Adjudication of this motion should await the conclusion of discovery. But in any event, Mr. Lewandowski and Lewandowski Strategic Advisors, LLC have adduced sufficient evidence to overcome summary judgment.

Respectfully submitted,

/s/ Christopher Wiest_____
Christopher Wiest (KBA 90725)
Chris Wiest, Atty at Law, PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
513/257-1895 (c)
859/495-0803 (f)

16

chris@cwiestlaw.com

/s/ Thomas B. Bruns_____
Thomas B. Bruns (KBA 84985)
Bruns, Connell, Vollmar, Armstrong
4555 Lake Forrest Dr., Ste. 330
Cincinnati, OH 45242
513-312-9890(v)

/s/Zach Gottesman_____
Zach Gottesman (KBA 86288)
404 East 12 St., First Floor
Cincinnati, OH 45202
zg@zgottesmanlaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I have served a copy of the foregoing upon all Counsel of record, by filing same with the Court, via CM/ECF, this 22 day of December, 2023.

/s/ Christopher Wiest_____
Christopher Wiest (KBA 90725)